IN RE SCHMIDT ET AL.

[Cite as In re Schmidt (1986), 25 Ohio St. 3d 331.]

(Nos. 85-473, 85-489 and 85-496—Decided August 13, 1986.)

*Coltman, Ebert & Valore Co., L.P.A.,* and *Andrew D. Bemer, Jr.,* for appellee Cuyahoga County Department of Human Services.

*Spiegelberg & Baich, Wilhelm G. Spiegelberg II* and *Dale A. Baich,* for appellant Donna J. Smith.

*Robert C. Kreps,* for appellant Robert D. Smith, Sr.

*John H. Lawson* and *Bruce Tyler Wick,* for appellants-intervenors William F. Smith and Goldie Smith.

*Maria A. Smith,* urging reversal on behalf of appellant Donna J. Smith, for *amicus curiae* Institute for Child Advocacy.

*Harris & Papcke* and *Mary E. Papcke,* urging reversal on behalf of appellant Donna J. Smith, for *amicus curiae* Women Together, Inc.

*Per Curiam.* Each of the appellants herein raises an issue or issues that will be addressed in this opinion. First, Robert D. Smith, Sr. contends that the juvenile court order that permanently terminated his parental rights with regard to his son, Robert Smith, Jr., was not supported by clear and convincing evidence. The juvenile court was required to determine (1) whether the welfare department had made a "good faith effort" to implement a family reunification plan, R.C. 2151.414(A)(1); (2) whether the parent had "acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care," R.C. 2151.414(A)(2); and (3) whether it was "in the best interest of the child to permanently terminate parental rights," R.C. 2151.414(A)(3). Upon consideration of the answers to the foregoing questions and of the child's custodial history, the juvenile court was authorized to grant permanent custody of Robert Smith, Jr. to the welfare department if clear and convincing evidence supported a finding that Robert, Jr. was (at the time of the hearing) and would continue to be (in the near future) "a child without adequate parental care." R.C. 2151.414(B).

We believe that clear and convincing evidence does support the order terminating Robert Smith, Sr.'s parental rights. The record reveals that, pursuant to the Cuyahoga County Welfare Department's family reunification plans, Robert, Sr. received a variety of services—including evaluation of, and counseling for, his alcoholism. These services continued up until Robert, Sr.'s incarceration following his conviction of gross sexual imposition; and, even after Robert, Sr.'s imprisonment, a county social worker contacted the prison's social worker in order to supply information regarding Robert, Sr.'s background and need for continued support services.

In spite of the services provided to Robert, Sr., he was unable to control his alcoholism; and, after his son and stepdaughters were removed from his home, he continued to physically abuse his wife, causing her to seek shelter in a home for battered women in February and June-July 1982. Robert, Sr.'s son, Robert Smith, Jr., was removed from his parent's custody in 1981 at the age of eight months, and he apparently has lived with only one set of foster parents during the time that he has been in the custody of the welfare department. Robert, Jr.'s prospects for adoption were described as "excellent."

The foregoing evidence satisfies the requirement that "clear and convincing evidence" support a termination of parental rights. The record reveals that Robert, Sr. was an alcoholic, who could not control his abuse of alcohol. Robert, Sr. sexually abused his stepdaughters; and he physically abused his wife,[1] even after his stepdaughters and son had been removed from Robert, Sr.'s home as a result of his behavior. Robert, Sr.'s

---

[1] Although the juvenile court did not make a finding on this point, some evidence in the record indicates that Robert Smith, Jr. also was physically abused while in his parent's custody.

counselors did not believe that he would be able to control either his alcoholism or his abusive behavior in the near future. As such, Robert Smith, Jr. properly was adjudged "a child without adequate parental care," and Robert Smith, Sr.'s parental rights properly were terminated.

The second appellant herein, Donna Smith, also contends that the order terminating her parental rights was not supported by clear and convincing evidence. We disagree with this contention.

Like Robert Smith, Sr., Donna Smith received a variety of services as a result of the implementation of the welfare department's family reunification plans. The record reveals, however, that Donna was less than diligent in her utilization of the available services. In January 1983, Donna Smith terminated counseling sessions that had focused on her inability to protect her children from the abusive conduct of her husband. Later, Donna was referred to parenting classes; but, as noted by the juvenile court, she attended only eleven of the twenty classes, made little progress, and was found to have tremendous emotional needs that took precedence over her desire to provide parental care.

Donna Smith did regularly exercise her right to visit once monthly with her children, and she demonstrated love and affection towards them. The record is clear, however, that Donna was desirous of reuniting with Robert, Sr. upon his release from prison. Donna was diagnosed at a community mental health center as having "adjustment disorder with anxiety and a personality problem with passive features," and a staff psychiatrist found her to have poor judgment and insight. These findings, in combination with the testimony of the social workers who dealt with Donna Smith, reveal that Donna was an extremely dependent person who was unable to place the safety and well-being of her children above her own emotional needs. Additionally, based upon Donna's reluctance to diligently pursue available services or to break her ties with Robert, Sr., Donna's counselors did not foresee any changes in her ability to care for her children in the near future.

Donna Smith argues that the juvenile court's conclusion that she had emotional problems was insufficient to support the termination of her parental rights, because R.C. 2151.414(A)(2)(b) requires the court to consider whether the parent has any emotional or mental "disorder." This argument lacks merit, however, because R.C. 2151.414(A)(2)(b) requires only *consideration* of whether an emotional or mental "disorder" exists and, assuming, *arguendo,* that the evidence concerning Donna Smith's emotional state does not amount to a "disorder," R.C. 2151.414 does not preclude the juvenile court from basing its determination, in part, on Donna's admitted emotional "problems." In fact, R.C. 2151.414(A)(2) *directs* the court to consider "all relevant factors" in determining whether the child is, or will be, without adequate parental care.

Thus, the juvenile court properly considered a wide variety of factors in rendering its judgment; and the children's best interests were properly

given great weight in the final determination. Lisa and Tammy Schmidt's prospects for adoption were described as "uncertain" at the time of the hearing; and, unlike Robert Smith, Jr., Lisa and Tammy had resided in several different foster homes prior to the juvenile court's decision in this case. In spite of the unsettled nature of Lisa and Tammy's care, however, the evidence clearly supports a finding that Lisa and Tammy's best interests (as well as those of Robert, Jr.) were served by a permanent termination of Donna Smith's parental rights.[2] Donna Smith's children properly were determined to be "without adequate parental care," and the Cuyahoga County Welfare Department's motion for permanent custody was properly granted based upon clear and convincing evidence.

Appellant Donna Smith challenges the clear and convincing evidence standard that is set forth in R.C. 2151.414 by asserting that Section 1, Article I, of the Ohio Constitution requires application of a reasonable doubt standard in proceedings involving the termination of parental rights. Donna Smith contends that because parental rights are encompassed in the fundamental rights of "enjoying and defending life and liberty" and "seeking and obtaining happiness" (as enunciated in Section 1, Article I, of the Constitution), the state should be required to prove its case beyond a reasonable doubt before parental rights are terminated. We decline to adopt this view.

While parental rights may be encompassed in the fundamental rights enunciated in both the Ohio and United States Constitutions, the rights of children to be free from physical, sexual and other abuses also are encompassed therein. We believe that the "clear and convincing evidence" standard set forth in R.C. 2151.414 strikes a proper balance between the fundamental rights of both parents and children; and, for this reason, we do not believe that the Ohio Constitution mandates the application of a "reasonable doubt" standard in proceedings involving the termination of parental rights. See Santosky v. Kramer (1982), 455 U.S. 745, in which the "clear and convincing evidence" standard was found to satisfy the due process requirements of the United States Constitution.

The third appeal consolidated herein was brought by William and Goldie Smith (the "Smiths"), the paternal grandparents of Robert Smith, Jr. The Smiths contend that their motion to intervene in the permanent custody proceedings below was denied in violation of both their constitutional right to due process and their rights, as interested parties, under statute and procedural rule.

The Smiths first argue that they were denied due process of law when the trial court denied their motion to intervene in the custody proceedings below. The crux of the Smiths' argument is that they were deprived of

---

[2] Donna Smith apparently placed her desire to reunite with Robert Smith, Sr. above her concern for the welfare of her children—especially that of Lisa and Tammy, whom Robert, Sr. had abused.

their constitutional right of association (with their grandson, Robert, Jr.) without being given the opportunity to be heard. This argument is flawed in its basic premise, however, because the proceeding in question did not deprive the Smiths of a "right" to associate with their infant grandson. The Smiths' association with Robert, Jr. occurred only because Robert, Jr.'s parents and, later, the Cuyahoga County Welfare Department (as Robert, Jr.'s temporary custodian) had granted the Smiths the privilege of visiting with him. This visitation privilege cannot reasonably be construed as an absolute or constitutionally protected "right" of association.

The Smiths' second argument focuses on the joinder requirements for custody proceedings as set forth in R.C. 3109.28. This statute states, in relevant part, that a "person not a party to the custody proceeding [who] has physical custody of the child or [who] claims to have custody or visitation rights with respect to the child" must be joined as a party to the proceeding. The Smiths contend that because they claimed to have custody or visitation rights with respect to Robert, Jr., it was error for the juvenile court to deny their motion to intervene.

We find that the juvenile court did not err in its application of R.C. 3109.28 when it rejected the Smiths' motion to intervene. There were no allegations or evidence set forth in the Smiths' motion to intervene that would reasonably indicate that the Smiths had a "right" to custody of, or visitation with, their grandson. While persons "claiming a right" to custody or visitation must be joined as parties to custody proceedings, any such claim must be colorable. The record in this case reveals only that the Smiths had a "desire" for custody or visitation. They never sought temporary or permanent custody of Robert, Jr., and their visitation with Robert, Jr. had occurred, with the consent of the welfare department, only during Donna Smith's once monthly visits with her children. In summation, the Smiths never obtained, through statute, court order, or other means, any *legal right* to custody or visitation with their grandson.

Likewise, the Smiths had no *legal interest* in the care and custody of their grandson, which would have allowed them to intervene as of right pursuant to Civ. R. 24(A). Although the Smiths contend that they claimed "an interest relating to the * * * transaction which [was] * * * the subject of the action and [were] * * * so situated that the disposition of the action [would] * * * impair or impede [their] * * * ability to protect that interest," Civ. R. 24(A)(2), the Smiths' "claimed interest" was not legally protectable. Just as the Smiths' desire for custody or visitation cannot be construed as a legal right to custody or visitation, the Smiths' concern for their grandson's welfare cannot be construed as a legal interest that falls within the scope of Civ. R. 24(A).

The final issue properly before the court is whether the juvenile court abused its discretion in failing to grant the Smiths' motion to intervene. The Smiths assert that a liberal construction of R.C. Chapter 2151 and the Rules of Juvenile Procedure, as required by R.C. 2151.01 and Juv. R. 1,

warranted their inclusion as parties to the permanent custody proceeding. Specifically, the Smiths point to R.C. 2151.01(C), which declares that one purpose of R.C. Chapter 2151 is to provide for the care of children *"in a family environment,* separating the child from its parents only when necessary for his welfare or in the interests of public safety." (Emphasis added.)

We concur in the Smiths' assertion that both R.C. Chapter 2151 and the Juvenile Rules are to be liberally construed so as to protect the interests of all concerned parties. We do not believe, however, that the juvenile court abused its discretion in denying the Smiths' motion to intervene. As discussed above, the Smiths had no legal right to custody or visitation with their grandson, and they held no legally protectable interest that was related to Robert, Jr.'s care and custody. Additionally, the emphasis placed on family unity by R.C. Chapter 2151 is limited almost exclusively to the nuclear family; and, unless a child is orphaned or abandoned, or an adult from the child's extended family in some manner has filled the role of parent, R.C. Chapter 2151 does not require that extended family members be made parties to custody proceedings. The record does not indicate that the Smiths ever stood *in loco parentis* to Robert, Jr. or that they ever exercised significant parental control over, or assumed any parental duties for the benefit of, their grandson. Based upon the foregoing and upon the nature of the custody proceeding, which was to determine *only* whether the parental rights of Robert Smith, Sr., Donna Smith, and John Schmidt should be terminated, the denial of the Smiths' motion to intervene was not an abuse of discretion.

Accordingly, the judgment of the court of appeals is affirmed as to all the appellants herein.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs, with opinion.

DOUGLAS, J., concurs in judgment only.

CELEBREZZE, C.J., concurring. I concur in the majority's determination to uphold the termination of the parental rights of Donna Smith, Robert Smith, Sr. and John Schmidt.

I also agree that on the facts of this case, the juvenile court did not abuse its discretion in denying the motion of Robert Smith, Jr.'s grandparents to intervene in the permanent custody proceeding. I write separately to emphasize that our decision today does not foreclose grandparent intervention in all such cases.

The goal of R.C. Chapter 2151 and the Juvenile Rules is to "provide for the care, protection and mental and physical development" of those children who find themselves under the jurisdiction of the juvenile court. R.C. 2151.01(A); Juv. R. 1(B)(3).

State intervention in the parent-child relationship and the termination of that relationship is the final option. Although R.C. Chapter 2151 does not require that grandparents be made parties to permanent custody proceedings brought by the state against the parents, I firmly believe that it is contrary to common sense, compassion and the best interests of the child to deny suitable grandparents their last meaningful opportunity to gain custody of the child.

Intervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectible interest in custody or visitation with their grandchild, where the grandparents have stood *in loco parentis* to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild. Where any of these circumstances are present, it is my view that a denial of the grandparents' motion to intervene would constitute an abuse of the juvenile court's discretion.