Appellant, Joey Sempecos, maternal grandmother of the minor Corena Stinson-Jasper, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, denying her motion to intervene in a permanent custody proceeding concerning Corena. We affirm.
On March 29, 1996, the Butler County Children Services Board ("BCCSB") filed an ex parte motion for temporary custody of Corena. On April 1, 1996, the trial court granted the maternal grandparents, appellant and her husband, Thedorous Sempecos, temporary custody of Corena pending an evidentiary hearing. On April 9, 1996, the trial court appointed a guardian ad litem. A case plan was filed by BCCSB with the ultimate goal of returning Corena to her mother. The plan called for the mother to have supervised visitation with Corena as arranged by appellant.
On May 9, 1996, Corena was returned to the temporary custody of BCCSB. At a hearing that same day, appellant indicated that Corena cried all day and that she was having difficulty handling Corena. The record also indicates that appellant was having marital difficulties during that time.
On March 18, 1997, a hearing was held before a magistrate. The magistrate addressed appellant by stating that "apparently everyone's come to the conclusion that you can — you can care for this child, and you're this child's grandmother, but the question is whether or not you want to * * *." At the hearing, Katherine Leonard, Corena's foster mother, stated that she and her husband, Philip Leonard, wished to adopt Corena. However, the magistrate informed appellant that there were no guarantees concerning adoption and explained the first step would be granting permanent custody of Corena to BCCSB. The magistrate also told appellant that
 [t]here have been time [sic] where children, for one reason or another, uh, things happen and there's a world of things that can happen . . . tragedies happen, * * * and sometimes kids do get taken out of foster to adopt homes, and when that happens — if it happened before the Permanent Custody case was decided and even if it happened after the Permanent Custody case was decided, you could probably come back into court and ask that you be reconsidered as a custodian at that point in time.
At that point, appellant decided not to seek custody of Corena.
BCCSB moved to terminate the mother's parental rights and for permanent custody on April 3, 1997. On May 30, 1997, a permanent custody hearing occurred before the magistrate. Appellant was present at the hearing, during which she again indicated that she did not wish to seek custody of Corena. After the hearing was concluded, BCCSB's motion for permanent custody was granted and the mother's parental rights to Corena were terminated.
On July 31, 1997, appellant moved for relief from the judgment granting permanent custody to BCCSB pursuant to Civ.R. 60(B). In addition, appellant moved for "immediate custody" of Corena. In a memorandum in support, appellant indicated that she previously had agreed to withdraw herself from consideration for custody based on two assumptions: (1) the child was going to be adopted by the Leonards, and (2) appellant would maintain visitation with Corena. Appellant had become aware during July 1997 that the Leonards were in the process of divorce and would not be adopting Corena.[1] Also, according to appellant, BCCSB had informed her that, due to the permanent custody order, her visitation was terminated.
In response, BCCSB filed a motion to dismiss, arguing that appellant lacked standing, res judicata applied, and the motion was "unsupported by the record." On November 7, 1997, in an interim order, the magistrate dismissed appellant's Civ.R. 60(B) motion, but granted appellant's motion to intervene. The magistrate also granted appellant supervised visitation with Corena. On November 14, 1997, the magistrate filed supplemental findings to the November 7, 1997 order. The magistrate indicated that appellant withdrew from consideration as Corena's custodial parent because (1) Corena's temporary placement with appellant had been problematic, and (2) she believed the Leonards would be adopting Corena.
On November 17, 1997, BCCSB filed objections to the decision and order of the magistrate. BCCSB argued, inter alia, that the magistrate's findings failed to consider Corena's best interest. On November 18, 1997, the trial court overruled the magistrate's interim order of November 7, 1997 and ordered the guardian ad litem to meet with Corena and her current foster parents to discuss the issue of appellant's "contact" with Corena.
On December 4, 1997, the guardian ad litem issued a report which concluded that Corena was well adjusted with her new foster parents. In addition, the report noted that the foster mother was "uncomfortable" with appellant visiting Corena. The foster mother did state that she probably would adopt Corena even if visitation was granted to appellant.
On December 23, 1997, in a final appealable order, the trial court stated that:
 As to the issue of joinder of [appellant], this court hereby denies that request and orders the guardian ad litem to present evidence to the court (including, but not limited to, testimony by [appellant] or any witnesses on her behalf) as is necessary to enable this court to render a just decision as to what relationship, custodial or otherwise, that this court should sanction as between [appellant] and Corena Jasper.
From this order, appellant filed a timely notice of appeal. Although appellant's brief fails to present any assignments of error as required by App.R. 6 and Loc. App.R. 11, we construe appellant's "issues" as the functional equivalent. In essence, the sole argument raised in the two "issues" is whether the trial court erred in denying appellant's motion to intervene in the permanent custody proceeding. We shall therefore consider appellant as having raised the following assignment of error: The trial court erred by denying appellant's motion to intervene in the permanent custody proceedings. After reviewing the record, we conclude that the trial court acted within its discretion in overruling appellant's motion to intervene.
Once the trial court terminated the mother's parental rights and granted permanent custody of Corena to BCCSB, the mother ceased to be a party, except for purposes of an appeal. R.C.2151.414(F). The permanent custody statute does not provide that a grandparent has a legal right to intervene in a permanent custody case after the natural parents' parental rights have been terminated.[2] In re Deleon (Dec. 22, 1994), Franklin App. No. 94APF05-763, unreported, at 5-6. See, also, R.C. 2151.414, et seq. Appellant never moved to intervene during the permanent custody hearing. Since a permanent custody order was subsequently entered, appellant had no legal right to intervene.
Although appellant had no basis to intervene as of right, "permissive intervention" could have been permitted at the discretion of the trial court. Deleon at 6. Upon our review of the record, we conclude that the trial court acted within its sound discretion by denying appellant's motion to intervene after the permanent custody order had been issued.
Appellant argues that intervention was appropriate because the magistrate mislead appellant, who was acting pro se, about the nature of the permanent custody proceedings. We agree that the magistrate mislead appellant about the consequences of an order granting permanent custody. However, the magistrate never promised appellant a future hearing in the event the adoption by the Leonards was not consummated. In addition, appellant was told at the permanent custody hearing that she was not a party to the proceeding.
Appellant asks this court, in essence, to apply equitable estoppel principles against a trial court. Appellant does not cite any case law, nor are we aware of any, to support this proposition. In the past, the Supreme Court of Ohio has refused to apply equitable estoppel against the state of Ohio and its agencies while performing governmental functions. Sekerak v. Fairhill Mental Health Center (1986), 25 Ohio St.3d 38, 39; Griffith v. J.C. Penney Co. (1986), 24 Ohio St.3d 112, 113-14. See, also, Reser v. Administrator, Ohio Bureau of Employment Services (Sept. 13, 1993), Fayette App. No. CA93-03-008, unreported, at 9-10. We recognize that these cases dealt primarily with executive and/or administrative functions. However, we refuse to apply estoppel based upon the statements of a magistrate.
Also, the nature of a permanent custody order allows a public children services agency, under the supervision of the probate court, to proceed to the adoption stage. To allow appellant to intervene after a permanent custody order was entered disturbs the finality of that order. The inevitable future result is delaying possible adoption for children in the permanent custody of a public children services agency. See R.C. 2151.414(D).
We remind the parties that we are not deciding the outcome of the guardian ad litem's investigation regarding whether appellant should have visitation and/or custody of Corena. Our decision is confined to the single question of whether appellant had a legal right to intervene as a party after a permanent custody order was entered against the natural parents. We answer that question in the negative. Accordingly, we find appellant's assignment of error is not well-taken.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] Corena was subsequently placed in another foster home.
[2] Since we conclude that appellant has no legal right to intervene after a permanent custody order has been entered, we express no opinion on the scope of a grandparent's right to intervene in a permanent custody hearing before a permanent custody order is entered by the juvenile court. See In re Schmidt (1986), 25 Ohio St.3d 331.