OPINION
Appellants Rosemary and Richard Stachowiak appeal from the decision of the Noble County Common Pleas Court, Juvenile Division, which dismissed, without hearing, their petition for custody of their grandson, William E. Wood, III (William). For the following reasons, the trial court's judgment is affirmed.
On July 1, 1996, Elizabeth Knobel arrived at the hospital pregnant, extremely intoxicated with a blood alcohol level of .300, and complaining that domestic violence was inflicted upon her by her unborn child's father, William E. Wood, II. On July 11 an intoxicated Ms. Knobel gave birth to William outside and then brought him to the hospital. Because Ms. Knobel was drunk and William displayed features of fetal alcohol syndrome, the hospital contacted the Noble County Department of Human Services (county) On July 12 the county filed and the court granted a motion seeking emergency custody of William.
A shelter care hearing was held on July 15, 1996. The court's judgment entry states that Mrs. Stachowiak, the maternal grandmother, declined to take temporary custody of William. Thus, the court granted temporary custody to the county who placed William in a foster home. A guardian ad litem was appointed. Ms. Knobel and Mr. Wood were granted visitation privileges which they attended infrequently. The county formulated a case plan to encourage reunification of William with his parents. At a hearing on February 25, 1997, Ms. Knobel admitted that William was a dependent child and all parties agreed to waive the time requirement for holding a dispositional hearing. A gradual visitation enlargement plan was put into effect by the court on February 27, 1997.
Soon thereafter, the county discovered that Ms. Knobel had been arrested for child endangerment on February 16, 1997. According to the police report, Ms. Knobel was drunk while she was supervising her six year old son James Maggard, her fourteen year old brother who is Mrs. Stachowiak's son, and Mr. Wood's two children ages ten and eleven. She was three months pregnant at the time and her blood alcohol level was .247. As such, on March 14, 1997, the county filed a motion for supervised visitation which the court granted immediately. The county also filed a motion for permanent custody of William.
The permanent custody hearing, case number 1069, began on July 29, 1997 but was continued until September 2, 1997. Mr. and Mrs. Stachowiak testified at the September 2 hearing. They asked the court to place William in their home and apparently submitted pictures of their house to the court. The Stachowiaks contend that the guardian ad litem indicated to them that he was going to recommend them as custodians but instead recommended that custody be granted to the county. As a result, the Stachowiaks' attorney entered his appearance on the record in case number 1069. On September 10 the Stachowiaks filed a petition seeking custody of William. This petition was filed as case number 1069 but assigned case number 1199 by the clerk. An affidavit attached to the petition stated that the Stachowiaks had custody of William's half-brother, James Maggard.
On September 19, 1997, the court filed a judgment entry in case number 1069 which terminated the parental rights of Ms. Knobel and Mr. Wood and granted permanent custody of William to the county. The judgment entry stated in part:
 "The father's mother initially expressed an interest in assisting in the rearing of the child. Indeed, one reason for postponing the final hearing on the present motion was to permit that grandmother to formally make such a request. None was made.
 The maternal grandmother has now expressed a desire to rear the child. Initially she declined. Present circumstances militate against such. She has most recently adopted another grandchild. She was essentially raising two other grandchildren, who have just recently moved with their mother to a mobile home located next to the grandmother's. Perhaps only a temporary reprieve. She is also the co-parent in a shared parenting arrangement with yet another grandchild (a child of the mother in this case). Her age (57) and other obligations put into serious question the stability of an arrangement caring for this child."
On September 30, the Stachowiaks asked that a pretrial be set on their custody motion. That same day, the court responded by holding that their custody motion was moot since permanent custody of William was granted to the county on September 19. The Stachowiaks appealed from this holding, but they did not appeal from the court's September 19 judgment entry which granted permanent custody of William to the county. The Stachowiaks set forth two assignments of error which they address contemporaneously and which provide as follows:
 "The Juvenile Court erred in dismissing without a hearing as moot a Petition To Determine Custody filed under § 2151.23
(a) (2), O.R.C. by grandparents."
 "The Juvenile Court erred in failing to conduct any hearing wherein the grandparents Petition To Determine Custody pursuant to 2151.23 (a) (2), O.R.C. was filed before any custody order was entered granting permanent custody to the Department of Human Services and terminating the parental rights of the natural parents."
The Stachowiaks posit that they have a due process right to be heard on their custody motion because they have an interest in William. They also assert that their petition is not moot because it was filed before the county was granted permanent custody of William. Many of the issues that present themselves in the case at bar have been addressed by In re Schmidt (1986),25 Ohio St.3d 331.
In Schmidt, grandparents attempted to intervene in a permanent custody proceeding where parental rights were being terminated. The trial court denied the grandparents' motion to intervene, and the grandparents appealed on due process, statutory, and procedural grounds. Nonetheless, the Supreme Court affirmed the trial court's denial of intervention. The Court held that grandparents do not have a constitutionally protected right to associate with grandchildren. Id. 335-36. As such, grandparents have no absolute right to participate in a permanent custody hearing. However, grandparents may have a procedural right to participate.
The Supreme Court held that grandparents generally have no legal interest in custody of grandchildren which would allow them to intervene as of right pursuant to Civ.R. 24 (A).Id. at 336. The potential exceptions may be where there is a prior court order giving the grandparent a right in the child, where the grandparent has stood in locoparentis to the child, or where the grandparent has assumed parental responsibility for or exercised parental control over the child. Id. at 338 (Celebrezze, J., concurring) In the case at bar, none of these exceptions are applicable. Since these exceptions are inapplicable, the Stachowiaks could only interject themselves into the county's permanent custody proceeding by seeking permissive intervention in accordance with Civ.R. 24 (B) (2). The decision whether to allow permissive intervention to grandparents is left to the trial court's sound discretion. Id. at 336-337.
Initially we point out that the Stachowiaks' September 10 petition for custody of William could be construed as a motion to intervene in the county's permanent custody case. As the motion was made so late in the process and there was no valid reason for the late request, the court would not have abused its discretion by denying the request for intervention at this point.[1] A juvenile court is not required to consider extended family members as possible custodians during a permanent custody proceeding initiated by the county with regards to an abused, neglected, or dependent child. Id. at 337. Pursuant to R.C. 2151.414 (B) (3), relatives only need to be considered in a permanent custody proceeding if the child is orphaned. According to R.C. 2151.28 (B) (1), the court must consider relatives as custodians before granting temporary custody to the county. However, when she had the opportunity, Mrs. Stachowiak declined temporary custody of William. More than a year later, she apparently had a change of heart. In the meantime, William was living in foster care. The Fifth District was similarly unimpressed with a grandmother's motivation for desiring custody where she did not attempt to get involved until she realized that there was a chance that her daughter was going to permanently lose custody. In re Travis Children (1992), 80 Ohio App.3d 620,626.
Alternatively, Mrs. Stachowiak's oral request for custody at the September 2, 1997 hearing could be construed as an informal motion for intervention. The Stachowiak's had ample opportunity to prepare for the hearing in which they testified. However, they failed to submit transcripts from the hearings so the content of their testimony is unknown. It is evident from the court's September 19, 1997 judgment entry that the court seriously considered Mrs. Stachowiak's oral request for custody. The court gave reasons why granting custody to the Stachowiaks would not be in William's best interests. Thus, the September 10 motion for custody could be seen as a superfluous, after-the-fact attempt to relitigate the issue of William's best interests. It could also be viewed as an irrelevant written motion filed simply to formalize the Stachowiaks' prior oral request. Therefore, the juvenile court properly labeled the Stachowiaks' motion moot because, in actuality, the court had already considered it, i.e. the issues have ceased to exist.
Further, the Stachowiaks attempt to argue that their petition for custody is a cause of action that is separate from the county's custody suit. They filed their petition under R.C.2151.23 (A) (2) which gives the juvenile court jurisdiction "to determine the custody of any child not a ward of another court of this state." However, they filed their petition under the same case number as the county's suit, which supports the proposition that their custody petition was basically an attempt to intervene rather than a separate cause of action. Moreover, Mrs. Stachowiak had already orally requested custody and the court had already heard her testimony in the county's suit. Because the Stachowiaks were, for all practical purposes, intervenors in the county's suit, the court was not obligated to consider a separate and additional suit which would encompass issues previously heard.[2]
In conclusion, the dismissal of the Stachowiaks' petition for custody is upheld on various grounds including mootness. Their due process argument fails because they had no absolute right to be heard in the permanent custody proceedings. Additionally, the Stachowiaks had no unequivocal right to intervene because they had no pre-existing legal right to see William, they never stood in loco parentis to William, and they never took parental responsibility for or exercised parental control over William. Grandparents only have a permissive right of intervention in a pending permanent custody suit brought by the county. Because the county's suit had already been instituted, the Stachowiak's petition for custody is essentially a motion for intervention. The question of whether to allow intervention is governed by an abuse of discretion standard. The trial court could have properly declined to address the Stachowiaks' request for custody. Instead, the court took their oral request for custody under consideration. What type of testimony the Stachowiaks gave and what type of evidence they presented is unknown as the transcripts are not before us. The Stachowiaks' written request for custody was just a restatement of the intervention that had previously been requested and decided. Hence, the court did not err by refusing to hold another hearing during which the Stachowiaks could be reheard on their request for custody of William.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Cox, P.J., concurs
Donofrio, J., concurs
APPROVED:
 _________________________ JOSEPH J. VUKOVICH, JUDGE
[1] "Strong grandparent-grandchild relationships are important aspects of our society and greatly contribute to a child's upbringing. However, where both parents have had their parental rights terminated and the child in question has been in county custody since he was born, the concept changes. There is no existing grandparent-grandchild relationship between William and the Stachowiaks. The court found that William cannot be reunited with his parents, and his parents did not appeal. It is reasonable to assume that if the Stachowiaks were granted custody of William, then he would grow up knowing his parents, both of whom are alleged alcohol and drug abusers. The court has determined it is in Williams best interests to grow up without the presence of his biological parents.
[2] Pursuant to R.C. 2151.353 (E) (1), the juvenile court retains jurisdiction over William until he reaches the age of majority or is adopted. Consequently, according to R.C. 2151.353
(E) (2), the county or a party, other than a parent whose rights have been terminated can request the court to modify or terminate its order of disposition. See In re Travis Children,supra at 626 (supporting the theory that because the court considered Mrs. Stachowiaks request for custody of William, she could be considered a party who can request modification or termination) This is what it appears the Stachowiaks attempted to do when they filed another petition for custody in December 1997. The court set this petition for hearing, but shortly before the hearing date, the Stachowiaks dismissed their motion because Mr. Stachowiak was recovering from heart surgery.