DECISION
This is an appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of DeJuan Grant, born March 16, 1996, to Franklin County Children Services.
Testimony at the hearing before the trial court established that DeJuan was removed from the care of his mother, Shamika Grant, and placed in foster care in June 1997, after unsuccessful efforts by Franklin County Children Services ("FCCS") to forestall placement by improving the child's family circumstances. FCCS received temporary custody of DeJuan and his younger half-sister Leseanda in September 1997. Although subsequent proceedings addressing placement and custody of the two children have often been contemporaneous, determinations concerning Leseanda are not at issue in the present appeal.
After obtaining temporary custody of DeJuan, FCCS prepared a reunification case plan and filed it with the court. The proposed case plan required Ms. Grant to address her documented substance abuse problems, obtain and maintain adequate housing, acquire and demonstrate parenting skills, eliminate domestic violence situations in her home, and address her own mental health difficulties. Progress on the reunification plan was interrupted when Ms. Grant was incarcerated until November 1998 on an attempted felonious assault conviction. After her release from prison, Ms. Grant did not make further progress on the case plan according to her FCCS caseworker at the time, and in fact, only visited DeJuan three times between November 1998 and the June 7, 1999 date of hearing on FCCS's permanent custody motion. Ms. Grant had last visited DeJuan on January 22, 1999 and did not attend the permanent custody hearing.
It is uncontroverted that appellant Marvin Parker, the putative father of DeJuan, was not given notice prior to the September 11, 1997 dependency determination. At the permanent custody hearing, however, FCCS presented evidence that appellant was not identified as the putative father of DeJuan until February 1998, and in fact no paternal involvement by anyone had been invoked in the agency's prior dealings on behalf of DeJuan. After finally being advised by Ms. Grant that appellant was the putative father, FCCS served notice of the motion for permanent custody on appellant who was, at the time, incarcerated. While still incarcerated, appellant contacted a caseworker and expressed a desire to establish a case plan addressing reunification with DeJuan. Appellant has at no time, however, moved for a legal determination of paternity of DeJuan or otherwise taken steps to demonstrate that he is actually DeJuan's father. Upon his release from prison appellant did visit regularly with DeJuan in the months of August and September 1998, and the caseworker believed that appellant was beginning to build a positive relationship with DeJuan. Appellant was, however, re-incarcerated in September 1998, and in March 1999 sentenced to a three-year term for a robbery conviction. FCCS introduced at the hearing appellant's records showing a total of fifteen convictions for various crimes.
After the permanent custody hearing, the magistrate filed on August 31, 1999, a decision finding that parental rights should be terminated and DeJuan should be permanently committed to the custody of FCCS. The magistrate found that DeJuan could not be reunited with his parents within a reasonable time as required by R.C. 2151.414(E), and that permanent custody was in the best interests of the child because the parents had failed to make progress to remedy the conditions that caused the child to be placed outside the home.
Appellant filed objections to the magistrate's decision. In a decision and judgment entry entered on March 28, 2000, the juvenile court overruled appellant's objections and adopted the magistrate's decision granting permanent custody of DeJuan to FCCS. The court found that there was overwhelming evidence that DeJuan could not be placed with either parent within a reasonable time, and furthermore, that it was not in the child's best interest that he be placed with either parent under the circumstances. The court noted the lack of contact between DeJuan and his parents, the absence of relatives willing or able to care for DeJuan until his parents improved their position, and DeJuan's close bond with his sister Leseanda who was already in the permanent custody of FCCS, thus improving the prospect of the children staying together. The court noted testimony that DeJuan and Leseanda were doing well in their common foster home and had a good relationship with their foster parents. The court also noted the agreement between the FCCS caseworker and the guardian adlitem supporting the magistrate's conclusion. Finally, the court found that appellant had not been prejudiced by his failure to receive notice of the 1997 dependent child determination.
Appellant has timely appealed and brings the following assignments of error:
 I. The Trial Court erred in not vacating the dependency judgment entry filed September 11, 1997 and in not dismissing Franklin County Children Services' motion for permanent custody of the child, DeJuan Grant, for lack of jurisdiction on the basis that Appellant, Marvin Parker, the father of the child, was not provided notice and the opportunity to be heard in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection
provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Denial of Appellant's fundamental right to notice and the opportunity to be heard; (3) fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
 II. The Trial Court erred in admitting Appellant's convictions occurring prior to the birth of the child, DeJuan Grant, that were irrelevant, substantially prejudicial, and misleading in violation of Ohio R. Evid. 401, 402, and 403 and Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 III. The Trial Court erred in denying Appellant's Motion setting forth two (2) requests (a) a trial by an impartial jury and (b) declaring Ohio R. Juv. P. 27 (A) and Ohio Rev. Code § 2151.35
(A), which requires the Juvenile Court to hear and determine all cases of children without a jury, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First, Seventh, and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights,
Sections One, Three, Five, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental right to an impartial jury; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
 IV. The Trial Court erred in denying Appellant's Motion setting forth two (2) requests (a) applying the "beyond the reasonable doubt" standard as the burden of proof that the State is required to show that its compelling interest is paramount to that of the Appellant and (b) declaring Ohio Rev. Code § 2151.414(B), which requires the "clear and convincing" standard as the burden of proof, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection
provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 V. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413
and § 2151.414 [in particular, E (1)(12); E(12) "Any other factor the court considers relevant."], which set forth Ohio Statutory Standards in ascertaining the termination of parental rights, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness, indefinite, and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) fundamental unfairness; and (4) Denial of the Equal Protection of the laws.
 VI. The Trial Court erred in terminating Appellant's parental rights in regard to Appellant's child, DeJuan Grant, in violation of this Honorable Court's mandate set forth in In the Matter of Gibson, McGraw (July 19, 1979), Nos. 78AP-856, 857, unreported (1979 Opinions 2005) and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness, and (3) Denial of the Equal Protection of the laws.
 VII. The decision of the Trial Court is against the manifest weight of evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions.
 VIII. The decision of the Trial Court is not supported by sufficient probative evidence in accordance with the Due Process
and Equal Protection provisions of the United States and the Ohio Constitutions.
Appellant's first assignment of error asserts that the trial court's initial dependency judgment entry with respect to DeJuan, and consequently the subsequent grant of permanent custody to FCCS, should be vacated based upon the absence of notice to appellant prior to the dependency adjudication. It is settled beyond question that parents have a constitutionally protected fundamental interest in the care, custody, and management of their children. Santosky v. Kramer (1982), 455 U.S. 745,102 S.Ct. 1388. Consequently, when the state seeks to terminate parental custody, parents are entitled to due process guarantees under theFourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself. Ohio has accordingly incorporated appropriate due process requirements into the statutes and rules governing juvenile adjudications and dispositions. Both R.C. 2151.35, governing hearings on dependency, and R.C. 2151.414, governing permanent custody hearings, provide for such notice to parents and guardians. Addressing this right to notice under a predecessor statute, the Supreme Court of Ohio stated flatly:
 * * * [T]he parents of a minor child or children are entitled to notice, actual or constructive, in a proceeding instituted in the Juvenile Court upon a complaint of dependency of such children. Unless such notice is given to the parents, the jurisdiction of the court does not attach and a judgment of commitment rendered in such proceeding is void.
In re: Corey (1945), 145 Ohio St. 413, paragraph one of the syllabus.
 Assuming that the father was unknown, the [juvenile authority] could have served him by publication, as provided in Juv.R. 16(A). * * * Such service goes to the heart of the court's subject matter jurisdiction in a dependency proceeding. * * *
 Even an apparently unconcerned or unknown putative father is entitled to the minimal protection of service by publication in a dependency proceeding.
In re John D. Ware (July 17, 1980), Cuyahoga App. No. 40983, unreported, at pages 2-3.
In the case before us, it is undisputed that appellant had not been identified as the putative father of DeJuan Grant until after the dependency adjudication and disposition. Personal service by appellee upon appellant, under such circumstances, would of course have been impossible. It is equally undisputed, however, that no attempt was made to serve the then-unknown father by means of publication. Under such circumstances, under the clear rule in Corey, the judgment of dependency entered by the trial court would be void.
While, pursuant to Corey and Ware, the validity of the initial judgment finding DeJuan to be a dependent child is in question, several courts have held that the validity of a subsequent judgment of permanent custody may not be affected where, in the interim, the putative father has appeared in the case, contested the permanent custody motion on other grounds, and thus waived his failure of service in the dependency action. In the case of In the Matter of: Jennifer L. (May 1, 1998), Lucas App. No. L-97-1295, unreported, the putative father was served notice of temporary custody hearing by publication while he was in prison, although the children's services agency had, through due diligence, learned of his whereabouts and could have effected personal service. The court acknowledged that the judgment of dependency could be ruled void as to the father if no valid service of notice was made on him. With respect to the subsequent permanent custody order, however, the court found that "the father waived his arguments relating to personal jurisdiction, and his ability to challenge the temporary custody order of the trial court as void when counsel who appeared on his behalf at the permanent custody hearings did not argue that the trial court had no jurisdiction to consider a motion for permanent custody against him. * * * [B]ecause the father's attorneys continued to make appearances and to invoke the jurisdiction of the trial court without arguing that the trial court had no jurisdiction to proceed, the issues of invalid service and lack of personal jurisdiction were waived. * * *" Id. at 8, 10.
Similarly, the court in Brown v. Miami County Children Services Bd.
(Apr. 5, 1991), Miami App. No. 90-CA-31, unreported, was faced with an initial failure of service upon the father in an initial delinquency proceeding concerning the juvenile. Although this initial judgment was void for failure of service, the defect "was cured when in the proceeding for permanent custody Appellant was given full notice and opportunity to be heard. The permanent custody proceeding encompassed all the rights and requests for relief before the court in the prior delinquency determination which impact[ed] on Appellant's right to custody of his child. Appellant cannot not point to any prejudice to that right suffered by reason of the failure of notice of the original delinquency complaint and determination." Id. at 2.
Even in cases in which the appellate court has reversed a subsequent judgment for failure of service in the initial dependency action, the court has done so only in the absence of a subsequent waiver by the father, who had at the first opportunity attacked the validity of the dependency determination based on lack of jurisdiction. In re: ZariaCrews (July 30, 1999), Montgomery App. No. 17670, unreported.
In the case before us, it is undisputed that once appellant received notice of the permanent custody motion, he was appointed counsel and invoked the jurisdiction of the court with multiple filings over the course of over a year, as well as counsel attending as many as four separate hearings regarding the motion for permanent custody without raising jurisdictional arguments. Although counsel subsequently raised the jurisdictional issue prior to the permanent custody hearing, the trial court found that, in delaying to raise the issue, appellant had voluntarily submitted himself to the jurisdiction of the court, and waived the issue of lack of service in the prior dependency action. Based on the above-cited authorities, we find no error on the part of the trial court in so holding. Appellant received effective and vigorous assistance of appointed counsel up to and during the permanent custody hearing, and was given full opportunity to assert his constitutionally protected parental rights. We accordingly find that the trial court's judgment affording permanent custody of DeJuan Grant to FCCS is not void due to lack of service in the prior dependency proceeding, and appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that the trial court erred in allowing FCCS to present evidence of appellant's fifteen separate prior criminal convictions. Appellant argues that evidence of the convictions was unfairly prejudicial and irrelevant, at least with respect to those occurring prior to DeJuan's birth. R.C. 2151.414(E)(8), as it read at the time of DeJuan's permanent custody hearing, expressly identifies repeated incarceration as a ground for finding that a child cannot be placed with the parent at issue within a reasonable time.[1]
While appellant's repeated incarceration since DeJuan's birth is, of course, the most probative aspect of his criminal history, we do not find that the trial court should be barred from considering incarceration prior to the child's birth as a basis for appellant's future ability to provide a stable home for DeJuan. Moreover, even if evidence of prior conviction was erroneously admitted, such evidence was not prejudicial to appellant in the overall context of the facts of this case, particularly in light of appellant's projected incarceration for a period of greater than eighteen months after the time of the hearing, itself an independent basis for permanent custody. R.C. 2151.414(E)(12).[2]
Appellant's second assignment of error is accordingly overruled.
Appellant's third assignment of error asserts the unconstitutionality of R.C. 2151.35(A), providing for trial without a jury in juvenile cases. Appellant's fourth assignment of error asserts the unconstitutionality of the clear and convincing evidence standard applied to permanent custody proceedings under R.C. 2151.414(B)(1), proposing that proof beyond a reasonable doubt be the constitutionally appropriate standard. Appellant's arguments with respect to both these issues have been previously considered and rejected by this court. See, e.g., In theMatter of: Antonio Kelly (Mar. 4, 1999), Franklin App. No. 98AP-588, unreported; In the Matter of: Pee Jay Condiff (Jan. 13, 2000), Franklin App. No. 99AP-364, unreported; In the Matter of: Wayne (Dec. 10, 1981), Franklin App. No. 81AP-631, unreported. Even more conclusively, the Ohio Supreme Court has found the clear and convincing evidence standard of R.C. 2151.414 to be constitutionally appropriate. In re Schmidt (1986),25 Ohio St.3d 331 . Appellant's third and fourth assignments of error are accordingly overruled.
Appellant's fifth assignment of error asserts that R.C. 2151.413 and 2151.414, governing motions for and adjudications of permanent custody, are unconstitutionally vague and overbroad. Appellant particularly faults R.C. 2151.414(E)(12)'s "catch all" provision allowing the court to consider "any other factor the court considers relevant," in addition to the many enumerated factors in the statute, when considering permanent custody proceedings. Since the trial court's judgment is based upon the specific enumerated factors in the statute providing grounds for the court to find that the child cannot be placed with the parent within a reasonable time, the constitutionality of the "catch all" provision is not at issue in the case before us. The specifically enumerated factors to be considered in a permanent custody hearing provide a more than adequate notice of conduct by parents that could result in termination of parental rights, and invoke a concrete statutory basis for exercise of the state's power to terminate those parental rights in the child's best interest. Appellant's fifth assignment of error is accordingly overruled.
Appellant's sixth assignment of error asserts that the trial court unlawfully and unconstitutionally terminated appellant's parental rights despite the initiation of a loving, caring, and affectionate relationship developing between appellant and DeJuan. A review of the record gives no indication that the trial court inaccurately assessed the degree of development of the parental relationship between appellant and DeJuan, based upon the frequency of appellant's visits with DeJuan during appellant's brief periods of release from incarceration, or improperly discounted this relationship when considered in context with other factors. Moreover, this particular challenge to the magistrate's findings of fact was not raised through objection before the trial court, and is therefore not properly before us for review. In the Matter of: Young
(Dec. 21, 1999), Franklin App. No. 99AP-489, unreported. Appellant's sixth assignment of error is accordingly overruled.
Appellant's seventh and eighth assignments of error assert that the judgment of the trial court granting permanent custody of DeJuan to FCCS is supported by insufficient evidence and against the manifest weight of the evidence. Without undue reiteration of the facts as presented at the hearing, and thus without excess repetition of circumstances not particularly flattering to appellant, there was both legally sufficient evidence to support the trial court's judgment and ample competent, credible evidence to permit reasonable minds to find that DeJuan's best interest, considering the enumerated factors under R.C. 2151.414, compelled a grant of permanent custody to FCCS. In particular, the uncontroverted evidence reflecting appellant's future incarceration of more than eighteen months past the date of the hearing, supports the trial court's findings. Appellant's seventh and eighth assignments of error are accordingly overruled.
In summary, appellant's first through eighth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of DeJuan Grant to FCCS is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The latest version of the statute contains an identical provision at R.C. 2151.414(E)(13).
[2] R.C. 2151.414(E)(6) at the time of the hearing.