OPINION
{¶ 1} On August 17, 2006, appellee, the Stark County Department of Job and Family Services, filed a complaint for the temporary custody of Blaze Young born June 3, 2005, and Desirae Young born August 9, 2006. Mother of the children is Christy Young; father is Anthony Young. Appellants herein are the children's paternal grandparents, Thomas and Rebecca Young. Appellants are divorced and live separately.
 {¶ 2} On October 31, 2006, Blaze was found to be a dependent child and Desirae was found to be an abused child. The children were placed in appellee's temporary custody.
 {¶ 3} On December 11, 2007, appellee filed a motion for permanent custody. On March 25, 2008, appellants each filed a motion to intervene. A hearing was held on April 8, 2008. By judgment entry field April 21, 2008, the trial court denied the motions.
 {¶ 4} A final hearing was held on May 6, 2008. By judgment entry filed May 20, 2008, the trial court terminated the parents' parental rights and granted appellee permanent custody of the children.
 {¶ 5} Appellants filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE PATERNAL GRANDPARENTS' MOTIONS TO INTERVENE." *Page 3 
 I {¶ 7} Appellant claims the trial court erred in denying their requests to intervene. We disagree.
 {¶ 8} Civ. R. 24 governs intervention and states the following:
 {¶ 9} "(A) Intervention of right
 {¶ 10} "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 {¶ 11} "(B) Permissive intervention
 {¶ 12} "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Page 4 
 {¶ 13} To the extent appellants' motions to intervene were based on subsection (A), this court's standard of review is de novo. To the extent their motions sought permissive intervention under subsection (B), our standard of review is abuse its discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 14} In denying appellants' motions to intervene, the trial court stated, "The court does not find from the evidence that the paternal grandparents' involvement with these children constitute the significant contacts and interests to justify intervention." See, Judgment Entry filed April 21, 2008.
 {¶ 15} The leading case on grandparent intervention is In reSchmidt (1986), 25 Ohio St.3d 331. In Schmidt, the Supreme Court of Ohio reviewed the issue of whether grandparents should be permitted to intervene as of right under Civ. R. 24(A). The Schmidt court at 336 determined the grandparents had no right to intervene because they "never obtained, through statute, court order, or other means, anylegal right to custody or visitation with their grandson." (Emphasissic.) The Schmidt court further determined the grandparents did not have any legal interest in the care and custody of their grandson, finding their "desire for custody or visitation cannot be construed as a legal right to custody or visitation," as their "concern for their grandson's welfare cannot be construed as a legal interest that falls within the scope of Civ. R. 24(A)." Id.
 {¶ 16} The Schmidt court then went on to determine if the trial court abused its discretion in denying the grandparents' motion to intervene. In finding the trial court did not abuse its discretion, theSchmidt court stated the following at 337: *Page 5 
 {¶ 17} "As discussed above, the Smiths had no legal right to custody or visitation with their grandson, and they held no legally protectable interest that was related to Robert, Jr.'s care and custody. Additionally, the emphasis placed on family unity by R.C. Chapter 2151
is limited almost exclusively to the nuclear family; and, unless a child is orphaned or abandoned, or an adult from the child's extended family in some manner has filled the role of parent, R.C. Chapter 2151 does not require that extended family members be made parties to custody proceedings. The record does not indicate that the Smiths ever stoodin loco parentis to Robert, Jr. or that they ever exercised significant parental control over, or assumed any parental duties for the benefit of, their grandson."
 {¶ 18} Appellants argue they were Blaze's primary caregivers from birth to about two years and four months old. Following his birth, the testimony reveals Blaze and his parents lived with appellant Thomas Young for one year. April 8, 2008 T. at 8. Appellant Thomas Young testified he "took care of him quite often * * * he spent a lot of time with me." T. at 9. However, appellant Thomas Young conceded the parents were making the fundamental decisions for Blaze's care. Id. at 13.
 {¶ 19} After one year, Blaze went to live with his grandmother, appellant Rebecca Young, without his parents. Id. at 9-10. Appellee became involved approximately two months later, following the birth of Desirae on August 9, 2006. Desirae was taken into appellee's custody at seven days old, and placed with appellant Rebecca Young. Id. at 12. The children remained with appellant Rebecca Young for approximately fourteen months. From time to time, the children would visit and stay at the home of appellant Thomas Young. Id. at 10-11. When the children were in *Page 6 
appellant Thomas Young's care, he acted as a "babysitter." Id. at 12-13. Appellee never relinquished custody to the grandparents, but consented to the placement of the children with appellant Rebecca Young.
 {¶ 20} No evidence was presented to show appellants had any legal right or interest in the care and custody of the children. Further, no evidence was presented to establish that they ever stood in loco parentis to the children or that they ever "exercised significant parental control over, or assumed any parental duties for the benefit" of their grandchildren. Appellant Thomas Young admitted the children's parents made the fundamental decisions when the children were with him, and as temporary custodians of the children, appellee made the fundamental decisions when the children were with appellant Rebecca Young.
 {¶ 21} Given the nature of the relationships as evidenced by the testimony, we find the trial court did not err in denying appellants' motions to intervene.
 {¶ 22} The sole assignment of error is denied. *Page 7 
 {¶ 23} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J. Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.