DECISION
Appellant, Sylvia Jaraki, appeals from two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of her three children to appellee, Franklin County Children Services ("FCCS").
Appellant is the mother of Aaron, Annie and Maria Thompson, ages six, four, and one, respectively, at the time the trial court rendered its decision. The putative father of the children is not a party to this appeal. Aaron and Annie were adjudicated dependent minors and temporarily committed to FCCS custody on September 15, 1998. Maria Thompson was born subsequently, found to be dependent, and also temporarily committed to FCCS custody on July 6, 1999. FCCS then moved for permanent custody under R.C. 2151.413(D)(1), which provides that an agency having temporary custody of a child shall move for permanent custody if:
 * * * [A] child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999[.] * * *
The two separate cases, one concerning Aaron and Annie, the other concerning Maria, were consolidated for trial. Prior to trial, the trial court overruled motions by counsel for appellant to declare various relevant statutes unconstitutional, to obtain a jury trial, and to change the predicate standard for a termination of parental rights from "clear and convincing evidence" to "beyond a reasonable doubt."
At trial, neither appellant nor the putative father of the children appeared, but appellant was represented by counsel. Each party only presented one witness: FCCS presented the testimony of Tamara White, the assigned case worker for FCCS. Appellant presented the testimony of Delores Thomas, Ms. White's supervisor with FCCS. Also introduced as evidence were treatment reports for the three children prepared by the foster home network where the children were placed.
Testimony presented by the FCCS case worker, Ms. White, established that the initial temporary commitment had been necessitated when appellant disappeared leaving the two older children, Aaron and Annie, with their putative father who had no adequate means of providing for them. Thereafter, the court-approved case plan for the children was drawn up which included addressing deficiencies in parenting skills, mental health instability in both parents, domestic violence, and housing instability. The plan also provided opportunities for visitation and bonding while the children were temporarily committed to the custody of the agency. Ms. White described the case plan objectives as not met by either parent. Appellant failed to successfully complete parenting classes or to demonstrate improvement in parental skills, nor did she consistently take advantage of opportunities to visit the children. Appellant did not follow through on recommended counseling and failed to take needed medication for her psychological conditions. Appellant did not undertake domestic violence counseling, and failed to secure stable housing. Ms. White testified that, at the time of trial, appellant had not visited with the children in over three months. Appellant's oldest child, a teenager at the time of trial and not involved in the proceedings, had already been adopted by the maternal grandmother.
Ms. White testified that Aaron and Annie had been in the temporary custody of FCCS since July 1998, or twenty-seven months at the time of trial, and Maria since her birth in May 1999, or approximately seventeen months. In Ms. White's opinion, the children were bonded amongst themselves and with their foster parents, but had a questionable bond with their mother and none at all with the putative father.
At both the outset and the close of Ms. White's testimony, counsel for appellant moved to strike the testimony in toto, based upon a failure to properly swear the witness upon her taking the stand. The trial court overruled the motions.
Delores Thomas, called by counsel for appellant, testified that she was Ms. White's supervisor with FCCS, and was herself familiar with the facts of the case. She did not, on the whole, dispute any of the characterizations offered by Ms. White, but did opine that "at some point" appellant and the putative father of the children had been good parents, without citing specific events or examples. Ms. Thomas also testified that the agency's preferred goal is always reunification, and permanent commitment is only sought in extreme cases. Ms. Thomas did acknowledge the mental health issues which prevented both parents from establishing a functional relationship with the children, or even visiting with them regularly.
At the conclusion of trial, the court found that FCCS had met the statutory requirements of R.C. 2151.414(B)(1)(d), and demonstrated that the children had been in the temporary custody of FCCS for a period greater than twelve out of twenty-two consecutive months. The court further found that the clear and convincing evidence demonstrated that, pursuant to R.C. 2151.414(D)(1-5), permanent custody would be in the best interest of the children.
Appellant has timely appealed and brings the following twelve assignments of error:
 I. The Trial Court erred in denying Appellant's Motion setting forth two (2) requests (a) applying the "beyond the reasonable doubt" standard as the burden of proof that the State is required to show that its compelling interest is paramount to that of the Appellant and (b) declaring Ohio Rev. Code § 2151.414(B), facially and as applied to Appellant, which requires the "clear and convincing" standard as the burden of proof, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 II. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 and § 2151.414 [in particular, E (1) (16); E (16) "Any other factor the court considers relevant."], facially and as applied to Appellant, which set forth Ohio Statutory Standards in ascertaining the termination of parental rights, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First
and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Vagueness, indefinite, and overbroad; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) [F]undamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 III. The Trial Court erred in denying Appellant's Motion setting forth two (2) requests (a) a trial by an impartial jury and (b) declaring Ohio R. Juv. P. 27 (A) and Ohio Rev. Code § 2151.35 (A), which requires the Juvenile Court to hear and determine all cases of children without a jury, unconstitutional and therefore void in violation of Appellant's fundamental rights pursuant to the First, Seventh, and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, Five, and Twenty and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental right to an impartial jury; (2) Denial of Appellant's fundamental expression of speech and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 IV. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 (D) (1) and Ohio Rev. Code § 2151.414 (E) (11) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that the statutory provisions violate Section Ten, Article One, First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Section Twenty-eight, Article Two, Legislative, Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of the ex post facto and retroactive provisions of the United States and the Ohio Constitutions; (2) Violation of Appellant's freedom of expression and right of association; (3) Fundamental unfairness; and (4) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 V. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.414 (E) (11) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that it mandates the Trial Court's consideration of acts, specifically, parental rights termination with respect to a sibling of the child, that maybe totally unrelated and irrelevant to the instant case in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 VI. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 (D) (1) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that it violates the "Separation of Powers" ("checks and balances") doctrine explicitly and implicitly set forth in the United States and the Ohio Constitutions and further violates Appellant's fundamental rights which are substantively protected under the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 VII. The Trial Court erred in denying Appellant's Motion requesting the Court to declare Ohio Rev. Code § 2151.413 (D) (1) and Ohio Rev. Code § 2151.414 (E) (11) [Amended effective March 18, 1999], facially and as applied to Appellant, unconstitutional and therefore void in that the statutory provisions create discriminant classifications with disproportionate treatment that do not meet the stringent requirements of the Strict Scrutiny test in violation of the First, Ninth, and Fourteenth, both Due Process and Equal Protection Clauses, Amendments of the United States Constitution and Sections One, Two, Three, Sixteen, and Twenty of the Ohio Constitution, Article One, Bill of Rights, on the following grounds: (1) Violation of Appellant's freedom of expression and right of association; (2) Fundamental unfairness; and (3) Denial of Equal Protection of the laws. Appellant further submits that her substantially important right is equal to that involved in "a criminal action to deny a defendant liberty or life" and, as such, should be entitled to the same heightened protections consistent with the United States and Ohio Constitutions.
 VIII. The Trial Court erred in not properly swearing in Appellee's only witness in violation of Ohio statutory law, Ohio R. Evid. 601 and 603, and further in violation of Appellant's fundamental rights pursuant to the First
and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 IX. The Trial Court erred in admitting hearsay testimony of Appellee's only witness in violation of Ohio Statutory law, Ohio R. Evid. 801 and 802, and further in violation of Appellant's fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Fundamental unfairness; and (3) Denial of the Equal Protection of the laws.
 X. The Trial Court erred in terminating Appellant's parental rights in regard to Appellant's children in violation of this Honorable Court's mandate set forth in In the Matter of Gibson, McGraw (July 19, 1979), Nos. 78AP-856, 857, unreported (1979 Opinions 2005) and further in violation of Appellant' fundamental rights pursuant to the First and Ninth Amendments of the United States Constitution and the Ohio Constitution, Article I, Bill of Rights, Sections One, Three, and Twenty, and the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) Denial of Appellant's fundamental expression of speech and right of association; (2) Funda-mental unfairness; and (3) Denial of the Equal Protection of the laws.
 XI. The decision of the Trial Court is against the manifest weight of evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville (2000), 120 S.Ct. 2054.
 XII. The decision of the Trial Court is not supported by sufficient probative evidence in accordance with the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions in light of Troxel v. Granville (2000), 120 S.Ct. 2054.
Appellant's first assignment of error asserts that the trial court erred in overruling appellant's motion requesting that the trial court apply the "beyond a reasonable doubt" standard, rather than the "clear and convincing evidence" standard applied to permanent custody proceedings in Ohio under R.C. 2151.414(B)(1). Appellant proposes that the parents' fundamental liberty interest in the care, custody, and management of their own children mandates the more stringent burden of proof. Appellant's arguments in this respect have been addressed and rejected by this court, the Ohio Supreme Court, and the United States Supreme Court. In re Grant (Feb. 8, 2001), Franklin App. No. 00AP-431, unreported; In re Schmidt (1986), 25 Ohio St.3d 331; Santosky v. Kramer (1982), 455 U.S. 745. Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that the statutes generally governing permanent custody proceedings, R.C. 2151.413 and 2151.414, should be declared unconstitutional and void under both the United States and Ohio Constitutions on grounds of vagueness, indefiniteness, and overbreadth. Specifically, appellant argues that, of the enumerated factors to be considered by a trial court in making a determination of parental rights under R.C. 2151.414(E)(1-16), R.C.2151.414(E)(16), is a catch-all provision which allows the trial court to consider "[a]ny other factor the court considers relevant" when making certain permanent custody determinations, give the court unbridled discretion in making its determination and is, thus, impermissibly vague and overbroad.
Appellant's argument on the constitutionality of R.C. 2151.414(E) is not apposite in the present case, because the trial court made its determination under a parallel, but distinct section, R.C. 2151.414(B)(1). The enumerated factors under R.C. 2151.414(E)(1-16) are those factors that the court will consider in determining "whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents," an alternative grounds for seeking permanent commitment to custody. The present motion for permanent custody was filed under R.C. 2151.414(B)(1)(d), based upon the children having been in the temporary custody of children's services for twelve or more months of a consecutive twenty-two month period. The factors set forth in R.C.2151.414(E) are not invoked in the present case. The trial court therefore did not err in rejecting appellant's constitutional arguments in this respect.
Appellant also asserts that the overall statutory scheme addressing permanent commitment of juveniles to custody in R.C. 2151.413 and 2151.414 exclusively makes "the best interest of the child" as the primary determinant in a parental rights determination proceeding. R.C.2151.414(A); 2151.414(B); 2151.414(D). Appellant contends that this conflicts with principles set forth by the United States Supreme Court in Troxel v. Granville (2000), 530 U.S. 57; Parham v. J.R. (1979),442 U.S. 584; Winconsin v. Yoder (1972), 406 U.S. 205; and Prince v. Massachusetts (1944), 321 U.S. 158. Appellant asserts that these cases firmly establish the primacy of a parent's constitutional right to assume the primary role in rearing his or her own child.
We agree with appellant that it is apparent that the legislature in Ohio has made the best interest of the child the touchstone of all proceedings addressing a permanent commitment to custody. The legislature has also recognized, however, that when the state seeks to terminate parental custody, parents are entitled to strict due process guarantees under the Fourteenth Amendment to the United States Constitution, including a hearing upon adequate notice, assistance of counsel, and (under most circumstances) the right to be present at the hearing itself. Ohio has accordingly incorporated appropriate due process requirements in the statutes and rules governing juvenile adjudications and dispositions, which are reflected in the extensive and rather intricate statutory framework expressed in R.C. 2151.413 and 2151.414. The statutes appropriately reflect the need to balance the extraordinarily significant rights and interests: parents' rights and interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction, in those unfortunate instances where thorough and impartial proceedings have determined that the parents are no longer in the best position to do so.
We do not find that the balance struck by the legislature in achieving this reconciliation between occasionally incompatible goals has been shown to be constitutionally offensive. Moreover, we do not read the cases cited by appellant as imposing a strict constitutional bias, favoring parental custody under all circumstances. Appellant's second assignment of error is accordingly overruled.
Appellant's third assignment of error asserts that the trial court erred when it overruled her motion for a jury trial in the permanent custody proceedings. R.C. 2151.35(A) expressly provides that "[t]he court shall hear and determine all cases of children without a jury." Appellant's arguments in this respect have been previously addressed and rejected by this court. In re Cundiff (Jan. 13, 2000), Franklin App. No. 99AP-364, unreported; In re Grant, supra. Appellant's third assignment of error is accordingly overruled.
Appellant's fourth assignment of error asserts that the trial court erred in denying appellant's motion to declare R.C. 2151.413(D) and 2151.414(E)(11) uncon-stitutional and void as violative of the ex post facto and retroactivity provisions of the United States and Ohio Constitutions. R.C. 2151.413(D)(1) provides that, an agency shall mandatorily seek permanent custody when the duration of temporary custody exceeds a set threshold:
 Except as provided in division (D)(3) of this section, if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. * * *
R.C. 2151.414(E)(11) is one of the enumerated factors under R.C.2151.414(E) under which a court may determine "whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents." The court is to consider whether the parent concerned has had parental rights terminated with respect to other children. As stated above in connection with appellant's second assignment of error, R.C. 2151.414(E) was not invoked in the present case, since the trial court properly made its determination of the best interest of the child under R.C. 2151.414(D). The constitutionality of R.C. 2151.414(E)(11) is, thus, not at issue in the present case. Moreover, although the record does indicate that appellant's parental rights were terminated with respect to her oldest child, there is no indication from the record or the trial court's decision that this was a significant factor in the decision. The great bulk of the evidence at trial, as well as the focus of the court's discussion in its decision, concerns the current condition of the children who are the object of the present action, and the prior commitment of an older sibling was only mentioned in passing. Even if R.C. 2151.414(E)(11) were applicable to the present case, therefore, a finding of unconstitutionality would not warrant reversal on these facts.
In contrast, R.C. 2151.413(D)(1) is essential to this case and merits constitutional assessment because it is under this section that appellee brought the motion for permanent custody.
An ex post facto law has been described as follows:
 `Ist. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.' * * *
Miller v. Florida (1987), 482 U.S. 423, 429, quoting Calder v. Bull (1798), 3 U.S. 386. The ban on ex post facto laws found in Section 10, Article I, United States Constitution, however, does not apply to enactments which reflect only procedural changes, rather than substantive changes in rights or the quality of conduct. Dobbert v. Florida (1977),432 U.S. 282.
The Ohio Constitution contains a similar ban on retroactive statutes at Section 28, Article II: "The general assembly shall have no power to pass retroactive laws." Interpreting this provision, the Ohio Supreme Court has held:
 * * * The prohibition against retroactive laws is not a form of words; it is a bar against the state's imposing new duties and obligations upon a person's past conduct and transactions, and it is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby. `The General Assembly having the power to enact laws, and * * * having enacted laws with certain limitations, and persons having conformed their conduct and affairs to such state of the law, the General Assembly is prohibited, estopped, from passing new laws to reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time.' * * *
Lakengren v. Kosydar (1975), 44 Ohio St.2d 199, 201.
In making the distinction between substantive or remedial statutes, the Ohio Supreme Court has held that a statute is substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, or creates a new right altogether. Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right. Id. A purely remedial statute does not violate the ban on retroactivity and ex post facto laws even when applied retroactively. Id. Laws relating to procedures are ordinarily remedial in nature. Id. at 107-108; Wellston Iron Furnace Co. v. Rinehart (1923), 108 Ohio St. 117, paragraph one of the syllabus.
It is apparent that R.C. 2151.413(D)(1) is procedural and remedial. It does not affect any vested rights on the part of parents, but alters only the time-line under which an agency having temporary custody shall move for permanent custody of a dependent minor. Parents had no vested right, either under statute or at common law, to an indeterminate temporary placement of their children prior to a motion for permanent custody. The full array of procedural safeguards for fundamental parental rights are preserved and effective to protect those rights upon a permanent custody hearing. The statute does not impose "new duties and obligations" upon appellant's past conduct and transactions, nor make an action innocently done before passage of the act criminal and punishable after the fact. As written and as applied on these facts, R.C.2151.413(D)(1) is not constitutionally offensive.
We accordingly find that appellant's constitutional challenge to the above-provisions is not well-taken because R.C. 2151.414(E) is not applicable to the present action and R.C. 2151.413(D)(1) does not violate the ex post facto and retroactivity provisions of the United States and Ohio Constitutions. Appellant's fourth assignment of error is accordingly overruled.
Appellant's fifth assignment of error is duplicative in that it reargues the unconstitutionality of R.C. 2151.414(E)(11). This issue having been resolved with respect to the present case in response to appellant's second and fourth assignments of error, appellant's fifth assignment of error is overruled.
Appellant's sixth assignment of error asserts that R.C. 2151.413(D)(1) violates the constitutional guarantee of separation of powers, in that it mandates an agency having temporary custody to move for permanent custody within a set period of time. Appellant argues that this time frame dictated by the legislature improperly infringes on the discretion of the executive branch, in the instance the agency having custody. Appellant's assignment of error accurately describes the relative functions of the legislative and executive branches, but does not further point out why a statute mandating a specific act on the part of the executive is constitutionally offensive per se. Appellant's sixth assignment of error is accordingly overruled.
Appellant's seventh assignment of error asserts that R.C. 2151.413(D)(1) and 2151.414(E)(11) violate the equal protection guarantees of the United States and Ohio Constitutions. Appellant's argument in support of this assignment of error is less than clear. We are unable to discern which "arbitrary and invidious" classification is alleged in the present case, unless it be a general categorization of parents into two classes, those who suffer the loss of their children to a permanent commitment to custody and those who retain their parental rights. Since appellant does not challenge the ultimate constitutionality of a permanent commitment to custody under all circumstances, the establishment of such a classification is not violative of equal protection. Appellant's seventh assignment of error is accordingly overruled.
Appellant's eighth assignment of error asserts that the trial court erred in not properly swearing FCCS's only witness, Ms. White, prior to her testimony. The record reveals the following exchange between the court, counsel, and the witness:
JUDGE CHINNOCK: Thank you. Call you first witness.
 ATTORNEY PHIPPS-CONGROVE: Your Honor, Children Services would call Tamera White, the caseworker, for the —
JUDGE CHINNOCK: Consider yourself sworn in.
 ATTORNEY BROCK: I object, Your Honor. She's not properly sworn in. I would move to strike all testimony thereafter.
JUDGE CHINNOCK: Consider yourself sworn.
ATTORNEY BROCK: Just note my objection.
JUDGE CHINNOCK: Okay.
By Attorney Phipps-Congrove:
Q. Please state your name for the record.
A. Tamera White. [Tr. at 24-25.]
The court employed a similarly summary method of swearing in the only other witness called at trial, Ms. Thomas. Pursuant to Juv.R. 34(I), the Ohio Rules of Evidence apply to hearings on motions for permanent custody. Evid.R. 603 provides that "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." It has long been held in Ohio that no particular form of words is necessary to the taking of the oath as long as the officer who administers it and the person taking it understand that an oath is being administered. Walker v. State (1910), 18 C.C.R. (N.S.) 1; State v. Frazier (1991), 61 Ohio St.3d 247.
We have addressed a similarly sketchy swearing-in procedure emanating from the same trial judge in two previous cases; In re Williams (Mar. 20, 2001), Franklin App. No. 00AP-973, unreported, and In re Harris (Mar. 20, 2001), Franklin App. No. 00AP-987, unreported. In both cases we found that, in the absence of objection, the procedure employed by the trial court did not rise to the level of plain error. Most other Ohio cases on this topic similarly deal with the plain error standard, and are not applicable to the present case, in which objections were clearly made. See, e.g., State v. Norman (1999), 137 Ohio App.3d 184; Moore v. Santee (Feb. 5, 1996), Stark App. No. 1995 CA 00184, unreported. Moreover, in at least one of these cases, Moore, the appellate court, in fact, found that the failure to administer an oath did rise to the level of plain error.
The purpose of swearing or affirming a witness is twofold: to impress upon the witness the solemnity of the event and the need to testify truthfully, and to subject the witness to the penalties of perjury if the testimony is subsequently proved false. In re Harris, supra, at 6. "The casual manner in which the trial judge proceeded undermines both purposes." Id. The record is, in fact, devoid of any indication that the witness affirmatively responded to the trial court's peremptory admonition to consider herself under oath. Under these conditions, it must seriously be questioned whether a witness would be subject to the penalties of perjury if false testimony were later shown. Moreover, even though we must acknowledge that the witness in this case was a professional case worker and no doubt accustomed to testifying in similar proceedings, the absence of even minimal compliance with the formalities of swearing in provides no reliable indicia that the purpose of administering an oath was fulfilled. It is simply not appropriate, in a hearing with such grave potential repercussions for both children and parents concerned, for confidence in the reliability and probity of the proceedings to be undermined by such cavalier treatment of the process of swearing a witness. Under the circumstances, the failure to swear the witness was all the more critical because Ms. White's testimony represented the sum total of the evidence submitted to sustain FCCS's burden of demonstrating by clear and convincing evidence that the best interest of the children required permanent commitment to custody, and that the statutory requirements for permanent commitment to custody had been met. Objection was noted both before and after the relevant testimony by counsel for appellant. We are compelled to find reversible error in this respect on the part of the trial court. Appellant's eighth assignment is accordingly sustained.
Appellant's ninth, tenth, eleventh, and twelfth assignments of error, addressing the admissibility of hearsay evidence and the manifest weight of the evidence adduced at trial, are rendered moot by our determination with respect to appellant's eighth assignment of error.
In summary, we uphold the trial court's preliminary determinations on the constitutionality of the relevant statutes, the inapplicability of trial by jury to the proceedings, and the appropriate standard of proof to be applied in permanent custody determinations. We find reversible error, however, in the trial court's conduct of the proceedings due to the reliance on essentially unsworn testimony from FCCS's chief witness.
In accordance with the foregoing, appellant's first, second, third, fourth, fifth, sixth, and seventh assignments of error are overruled. Appellant's eighth assignment of error is sustained and appellant's ninth, tenth, eleventh, and twelfth assignments of error are rendered moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is reversed, and the matter is remanded for a new trial on appellee's motion for permanent commitment to custody.
 ____________________ DESHLER, J.
TYACK and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.