DECISION AND JUDGMENT ENTRY
{¶ 1} Alicia Christman appeals the Athens County Court of Common Pleas, Juvenile Division, decision permanently terminating her parental rights to her biological son, Jordan Mourey. Christman asserts that the trial court erred in denying the motion of her mother, Alice Duncan, to intervene in the custody proceedings. Because Duncan did not possess any colorable claim to custody of Jordan at the time she attempted to intervene, we disagree. Christman also asserts that the trial court failed to adequately consider whether a secure placement for Jordan could be achieved without complete termination of her parental rights. Because our review of the record reveals that the court considered all possible alternatives and that some competent credible evidence supports the trial court's finding that terminating Christman's parental rights is in Jordan's best interests, we disagree. Finally, Christman contends that Athens County Children Services failed to prove by clear and convincing evidence that it made sufficient reasonable efforts to prevent the continued removal of Jordan from her custody. Because the record contains some competent credible evidence that ACCS made sufficient reasonable efforts to reunite Christman and Jordan, but that Christman failed to follow through with the services that ACCS offered, we disagree. Accordingly, we overrule each of Christman's assignments of error, and we affirm the judgment of the trial court.
 I. {¶ 2} Jordan was born to Christman and George Mourey on October 2, 1999. Jordan's kidneys were not functioning properly even prior to his birth. Currently, he has only one kidney, which is damaged and will likely require transplant surgery in the future. His medical condition requires careful monitoring of his diet and prompt medical attention when physical symptoms manifest.
 {¶ 3} George Mourey has had no contact with Jordan since May of 2001, and has not participated in these proceedings, though he was notified of them.
 {¶ 4} Christman was a minor when she gave birth to Jordan, and was living at home with her mother, Duncan, at the time. Duncan kept Jordan in her home for several months. In March or April of 2001 Christman began to exhibit symptoms of schizophrenia. Christman reportedly was living out of a car and working as an exotic dancer in Columbus.
 {¶ 5} Athens County Children Services ("ACCS") obtained emergency custody of Jordan in May of 2001, shortly after he reached six months of age. The hospital was ready to release Jordan following his admission for a urinary-tract infection, but Christman's whereabouts were unknown. ACCS's first concern with Jordan was the fact that, despite his life-threatening kidney condition, Christman had failed to take him to seven out of sixteen doctor appointments at Children's Hospital.
 {¶ 6} In continuing ACCS's temporary custody of Jordan in June of 2001, the trial court granted visitation rights to Duncan and her husband Charles, Jordan's step-grandfather. However, the Duncans did not regularly visit with Jordan. The ACCS filed an amended case plan to terminate the Duncans' visitation rights. The trial court terminated the Duncans' visitation by an entry filed on April 18, 2002.
 {¶ 7} During the ACCS's custody of Jordan, Christman missed several of Jordan's doctor appointments. Christman did not consistently attend visitation with Jordan. On those occasions when she exercised her visitation, caseworkers observed that Christman's interactions with her son were very poor.
 {¶ 8} The final dispositional hearing began on August 5, 2002. On that day, the Duncans filed a motion to intervene and requested that the court join them as parties. The trial court denied their motion. The ACCS rested its case on August 6, 2002. The trial court continued the hearing to September 23, 2002 for Christman's presentation of evidence, and to October 21, 2002 for the ACCS to call rebuttal witnesses.
 {¶ 9} The testimony at the adjudicatory hearing revealed that Christman lived in several places during Jordan's temporary placement with ACCS, but she did not obtain suitable housing for Jordan as required by her case plan. In particular, Christman identified the Duncans' home as an inappropriate environment for her and Jordan because she often did not get along with her mother and stepfather and because her stepfather allegedly gave her a marijuana cigarette laced with another drug. Christman's ACCS caseworker described the two apartments she was aware of Christman living in during the hearing as covered in trash, inappropriate for children, dirty, and not approved by ACCS.
 {¶ 10} Testimony and exhibits also revealed that in November of 2001, Christman was involuntarily hospitalized. She was diagnosed by two doctors as suffering from paranoid schizophrenia. Christman is unwilling to take medication to manage her illness. Christman's current caseworker opined that Christman is unable to take care of Jordan's special medical needs or even his basic needs, especially in light of the fact that she refuses to address her mental illness.
 {¶ 11} Duncan testified that she wanted Jordan returned to Christman's custody. She testified that she would make herself available "24/7" to help Christman take care of Jordan. Duncan also requested that the court award custody of Jordan to her if the court decided to not return Jordan to Christman.
 {¶ 12} Duncan admitted that she has a son who just turned eighteen and was in Children Services custody until the age of eighteen. Duncan has a second daughter who was in Children Services custody from the time she was approximately twelve years old until she was fifteen or sixteen, when she went to live with her father or another adult. Duncan also admitted that she lost at least temporary custody of Christman when Christman was sixteen years old.
 {¶ 13} Duncan testified that, although she has called police and had her husband put in jail on three occasions for domestic violence, he has never hit her or shown violence toward her. Duncan currently lives with her husband.
 {¶ 14} Christman admitted in her testimony that she has no current source of income with which to support herself and Jordan, and that she has only $500 in savings. Christman stated that she was not working because she is about to start nursing school. However, she could not explain why she had not worked during the summer months preceding school. Additionally, Christman admitted that fall classes had begun, but she was unable to attend because she had yet to fill out the appropriate paperwork to obtain financial aid.
 {¶ 15} Christman testified that she cares very much for Jordan and wants to raise him herself or with Duncan's help. However, on the final day of the hearing, October 21, 2002, Christman's caseworker with ACCS testified that between the date of Christman's testimony, September 23, 2002, and the final day of the hearing, Christman missed three of four scheduled visits with Jordan. In particular, Christman missed a special visit with Jordan that she had requested on the day of his birthday.
 {¶ 16} Jordan's foster parents demonstrated an ability to take care of Jordan's special medical needs during his placement with them. His foster mother, Deborah Arnold, testified that Jordan gets along well with her two adult children and her twelve year old son, and that she and her husband wish to adopt Jordan. Jordan's guardian ad litem submitted a recommendation that permitting the Arnolds to adopt Jordan would serve his best interests.
 {¶ 17} The trial court found that Jordan's father had abandoned him. Additionally, the trial court found that ACCS had temporary custody of Jordan for more than twelve months of a consecutive twenty-two month period ending on or after March 18, 1999, and that ACCS had made reasonable efforts to reunite Jordan with his mother. The trial court concluded that granting permanent custody to ACCS is in Jordan's best interests, and therefore terminated Christman and Mourey's parental rights.
 {¶ 18} Christman appeals, asserting the following assignments of error: "I. Grandmother had a colorable claim to custody of child, and had regularly scheduled visitation. She should have been joined as a party, and her motion to intervene should have been granted. II. The trial court failed to adequately consider all relevant factors in making the `best interests' determination, especially whether a legally secure placement could be achieved without complete termination of parental rights. III. ACCS failed to prove by clear and convincing evidence that it made sufficient reasonable efforts to prevent the continued removal of the child from the home."
 II. {¶ 19} In her first assignment of error, Christman contends that the trial court erred when it denied Duncan's motion to intervene in the permanent custody proceedings.[1]
 {¶ 20} Generally, a party cannot appeal an alleged violation of another party's rights. However, "[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant." In re Smith (1991),77 Ohio App.3d 1, 13; In re Hiatt (1993), 86 Ohio App.3d 716, 721. In this case, it is not clear that Christman's interests are aligned with Duncan's, as a reunification of Christman and Jordan would not necessarily confer any visitation rights upon Duncan. However, both Christman and Duncan sought reunification of Jordan with his biological family.
 {¶ 21} Even assuming that Christman possesses standing, we find no merit to Christman's claim that the trial court erred in denying Duncan's motion to intervene. A person must possess a statutory right or a legal interest in the subject matter of an action in order to possess a right to intervene. Civ.R. 24(A). Generally, a grandparent has no constitutional right of association with his or her grandchildren. In reSchmidt (1986), 25 Ohio St.3d 331, 336. But a person who has visitation rights with respect to a child has the right to be joined as a party to any parenting proceeding. In re Fusik, Athens App. No. 02CA16, 2002-Ohio-4410, ¶ 20.
 {¶ 22} In this case, Duncan initially possessed visitation rights with Jordan. However, on April 1, 2002, ACCS filed a modified case plan seeking elimination of the grandparents' visitation rights. Duncan did not file a response. On April 18, 2002, the trial court adopted ACCS's case plan and eliminated Duncan's visitation rights. Duncan did not file a motion to intervene in the case until the day of the final permanent custody hearing, August 5, 2002.
 {¶ 23} Because Duncan did not seek to intervene at a time when she had visitation rights with respect to Jordan, Duncan had no colorable claim to visitation or custody of Jordan at the time she sought to intervene. Therefore, the trial court did not err in declining her motion to intervene as a party in this case. Accordingly, we overrule Christman's first assignment of error.
 III. {¶ 24} In her second assignment of error, Christman asserts that the trial court failed to adequately consider all relevant factors in making its best interests determination. In particular, Christman contends that the trial court did not give adequate consideration, as required by R.C. 2151.414(D)(4) to her proposed alternate plans: (1) that she take custody of Jordan with Duncan's help, or (2) that Duncan take custody of Jordan.
 {¶ 25} R.C. 2151.414(D) requires the court to make a finding regarding whether permanent custody is in the child's best interest. One of the factors the trial court must consider in determining whether it is in a child's best interest to terminate parental rights, is whether a "legally secure permanent placement" can be achieved without a grant of permanent custody to the agency. R.C. 2151.414(D)(4).
 {¶ 26} A permanent custody determination made pursuant to R.C.2151.414 must be supported by clear and convincing evidence. In re BabyGirl Doe, 149 Ohio App.3d 717, 738, 2002-Ohio-4470, ¶ 89; In reHiatt (1993), 86 Ohio App.3d 716, 725. We will not reverse a trial court's order terminating parental rights if, upon a review of the record, we can find that the record contains sufficient evidence to satisfy the clear and convincing standard. Baby Girl Doe at ¶ 89; Inre Wise (1994), 96 Ohio App.3d 619, 626. The "clear and convincing evidence" standard is a higher degree of proof than the "preponderance of the evidence" standard generally utilized in civil cases but is less stringent than the "beyond a reasonable doubt" standard used in criminal cases. Baby Girl Doe at ¶ 89, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74. We will not substitute our own judgment for that of a trial court applying a "clear and convincing evidence" standard where some competent and credible evidence supports the trial court's factual findings. Schiebel; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. The trial court's discretion in making the final determination should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608, ¶ 102, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74.
 {¶ 27} In this case, the trial court stated that it found, by clear and convincing evidence, that placing Jordan in the permanent custody of ACCS would be in Jordan's best interests based upon the factors outlined in R.C. 2151.414(D). We find that the record contains some competent credible evidence supporting this finding. In particular, with regard to whether the court could place Jordan with Christman or Duncan, we find that the record contains some competent credible evidence that it could not.
 {¶ 28} Christman frequently failed to attend visitation. Even during the pendency of the hearing, she failed to attend three out of four visits with Jordan in a one month period. Christman has no income and no explanation for why she had not worked in approximately four months at the time of the hearing, other than that she intends to start school in the fall. Further, although she states that she intends to attend nursing school, fall classes began on the day of the hearing, and she had yet to take the necessary steps to enroll.
 {¶ 29} Moreover, Christman refuses to take prescribed medication for her mental illness. Christman's doctor testified that although her schizophrenia is currently in remission, a schizophrenic's refusal to take anti-psychotic medication during periods of remission will place the patient at a 75% risk for a second psychotic break within six to twenty-four months, which will likely be more severe than the first. He further testified that often a patient who has refused medications in the past cannot, even with medication, be restored to previous levels of functioning after the second psychotic break. The doctor stated that Christman indicated that she understands these risks, yet still refuses to take her medication.
 {¶ 30} Duncan's own testimony revealed that she was unable to raise her three children, each of whom have only recently attained the age of majority, without losing at least temporary custody to one of several county children services agencies. Additionally, Duncan admitted that officers have arrested and imprisoned her husband, with whom she shares a home, for acts of domestic violence against her on three occasions. Christman testified that she does not get along well with Duncan's husband, in part because he once gave her a marijuana cigarette that was, unbeknownst to Christman, laced with another drug.
 {¶ 31} We find that the facts outlined above constitute some competent credible evidence that neither Christman nor Duncan is able to provide a secure placement for Jordan. Therefore, we find that the trial court did not abuse its discretion in finding by clear and convincing evidence that Jordan's best interests will be served by granting permanent custody to ACCS.
 {¶ 32} Accordingly, we overrule Christman's second assignment of error.
 IV. {¶ 33} In her final assignment of error, Christman asserts that ACCS failed to prove by clear and convincing evidence that it made reasonable efforts to prevent the continued removal from Jordan from her custody. Christman contends that she completed all parenting classes and attended almost all visits, but did not receive adequate assistance from ACCS in addressing housing and employment issues. Christman also asserts that Jordan's medical condition has stabilized, and therefore that ACCS should have considered a trial placement back with her or a placement with Duncan.
 {¶ 34} The trial court found by clear and convincing evidence that ACCS provided Christman with case management, visitation, shelter care, psychological evaluations, parenting classes, referral to the Beacon School for Jordan, referral to Tri-County Mental Health and Counseling, playgroups with Jordan, and gas vouchers. The court further found that these efforts did not prevent or eliminate the need for Jordan's placement with ACCS because Christman failed to follow through with the case plan, her counseling appointments, the recommendations of her psychiatrist, and visitation.
 {¶ 35} The record contains testimony from Christman's caseworkers that they developed a case plan with Christman. Caseworkers provided Christman with gas vouchers for coming to visits and appointments, and created a calendar with entries for all of Christman's scheduled visits, appointments, and even Christman's work schedule. Christman habitually arrived late for visits and failed to interact with Jordan during the visits. She would leave during the visit to smoke or go get food. Despite reminders from caseworkers, she failed to monitor Jordan's water intake as required by Jordan's kidney condition.
 {¶ 36} Although ACCS provided gas vouchers and scheduled Jordan's doctor appointments according to Christman's requests, she arrived late or missed the doctor appointments. Despite ACCS arranging for counseling at Tri-County Mental Health and Counseling and providing gas vouchers, Christman missed half of her counseling appointments.
 {¶ 37} After her involuntary hospitalization, Christman quit attending her psychiatrist and psychologist appointments and discontinued her anti-psychotic medications against the advice of her doctor. She continued to fail to attend visits with Jordan or even call to cancel scheduled visits, and was frequently late to the visits she did attend. While the dispositional hearing was pending, she missed several scheduled visits, including a special visit that she had requested and ACCS arranged on Jordan's birthday. Christman's caseworker testified that, although Christman cooperated in meeting some objectives in her case plan, overall Christman was non-compliant.
 {¶ 38} We find that the above testimony constitutes some competent credible evidence that ACCS made sufficient reasonable efforts to reunite Christman with Jordan. Therefore, we find that the trial court did not err in finding, by clear and convincing evidence, that ACCS made reasonable efforts to make it possible for Jordan to return to Christman's custody. We overrule Christman's third assignment of error.
 {¶ 39} Accordingly, we find that the trial court did not abuse its discretion in terminating Christman's parental rights to Jordan. Having overruled each of Christman's assignments of error, and we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure.
Exceptions.
Evans, P.J. and Harsha, J.: Concur in Judgment and Opinion.
[1] Although both Alice Duncan and her husband, Charles Duncan, filed the motion to intervene in the trial court, Christman only appeals the denial with respect to Alice Duncan.