IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 26, 2003

# JENNIFER SKERRETT v. THE ASSOCIATION FOR GUIDANCE, AID, PLACEMENT AND EMPATHY, INC.

**Appeal from the Juvenile Court for Davidson County**
**No. 2119-61120      Betty Adams Green, Judge**

---

**No. M2002-00218-COA-R3-JV - Filed July 11, 2003**

---

This appeal involves a paternal grandmother's efforts to obtain permanent custody of her grandson. After the child's mother surrendered him to a licensed child-placing agency, the grandmother intervened in the proceeding commenced in the Davidson County Juvenile Court to terminate her son's parental rights. Following a bench trial, the trial court terminated the father's parental rights and denied the grandmother's request for custody. While the grandmother does not contest the termination of her son's parental rights, she asserts on this appeal that the juvenile court erred by awarding custody of the child to the child-placing agency rather than to her. We have determined that, under the facts of this case, the grandmother lacked standing to intervene in the proceeding to terminate her son's parental rights. Therefore, we affirm the dismissal of her custody petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Jennifer Skerrett.

Jade A. Rogers, Gallatin, Tennessee, for the appellee, The Association for Guidance, Aid, Placement, and Empathy, Inc.

**OPINION**

**I.**

Edwin Alexis Skerrett and Fatima Dominguez were both teenagers when they began dating in early 1999. They began living together in August 1999 but their relationship ended in March 2000 because of Mr. Skerrett's excessive drug use and his abusive conduct toward Ms. Dominguez. Three months later, Ms. Dominguez discovered she was pregnant with Mr. Skerrett's child. Mr. Skerrett declined to support Ms. Dominguez when he learned of her pregnancy, and Ms. Dominguez contacted a licensed child-placing agency, the Association for Guidance, Aid, Placement and Empathy, Inc. ("AGAPE"), for assistance. When the child was born on November 7, 2000, Ms.

Dominguez permitted AGAPE to place him immediately in a pre-adoptive foster home. The child has been in this home since November 13, 2000.

AGAPE contacted Mr. Skerrett on November 10, 2000 to make arrangements for visitation and child support. In February 2001, after Mr. Skerrett had failed drug screens on every visitation, AGAPE established a plan of care for Mr. Skerrett that included treatment of this drug addiction. For the next five months, Mr. Skerrett continued to test positive for marijuana and cocaine, cancelled a number of scheduled visits with his son, and contributed only $500 for his son's support. Accordingly, on June 21, 2001, AGAPE filed a petition in the Davidson County Juvenile Court to terminate Mr. Skerrett's parental rights.

Jennifer Skerrett, Mr. Skerrett's mother, had only one brief visit with her grandson shortly after his birth and had not established any sort of significant relationship with the child. After AGAPE filed its petition to terminate her son's parental rights, she moved to intervene in the proceeding to obtain custody of her grandson. The juvenile court allowed Ms. Skerrett to intervene and ordered AGAPE to prepare a home study of her home. The court also permitted Ms. Skerrett to accompany her son during his visits with the child.

The juvenile court conducted a hearing on November 19, 2001 regarding AGAPE's termination petition and Ms. Skerrett's request for custody. On December 19, 2001, the court entered an order terminating Mr. Skerrett's parental rights and denying Ms. Skerrett's request for custody. Mr. Skerrett has not appealed from the termination of his parental rights. However, Ms. Skerrett has appealed from the juvenile court's denial of her request for custody of her grandson.[1]

## II.
### MS. SKERRETT'S STANDING TO INTERVENE

The pivotal issue in this case is whether Ms. Skerrett should have been permitted to intervene in her son's termination proceeding. Even though AGAPE questioned Ms. Skerrett's standing, the juvenile court did not address the issue directly and actually considered the substance of her request. We have determined that Ms. Skerrett lacked a legally protectable interest in the custody of her grandson that warranted permitting her to intervene in this proceeding. Accordingly, we affirm the dismissal of her petition on grounds other than those relied upon by the juvenile court.[2]

The Tennessee Rules of Juvenile Procedure do not contain a rule governing intervention similar to Tenn. R. Civ. P. 24. While certain rules of civil procedure are applicable to proceedings

---

[1] Despite the fact that the juvenile court's final order was entered on December 19, 2001, the complete transcript of the November 9, 2001 proceedings was not filed until April 7, 2003. This sixteen-month delay in preparing the record is unacceptable and inconsistent with Tenn. Code Ann. § 36-1-124 (2000) which requires that termination of parental rights cases and adoption cases must be expedited by both trial courts and appellate courts.

[2] This court may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith,* 720 S.W.2d 48, 50 (Tenn. 1986); *Pendleton v. Mills*, 73 S.W.3d 115, 131, n. 28 (Tenn. Ct. App. 2001); *Allen v. National Bank of Newport,* 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't,* 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

in juvenile court,[3] Tenn. R. Civ. P. 24 is not among them. Accordingly, we must look elsewhere for the rules and principles that should be used to determine whether a party should be permitted to intervene in a proceeding to terminate parental rights.

Proceedings in juvenile court, and particularly adoption and termination proceedings, must be conducted in a way that recognizes and protects the rights of all affected persons. Tenn. Code Ann. §§ 36-1-101(a)(4), 37-1-101(a)(4) (2001).[4] They are intended to be "simple"[5] and to be conducted in an "expeditious manner."[6] They are also intended to further and promote the child's bests interests, and to that end, the rights and interests of the affected children are always superior to the rights and interests of the affected adults.[7]

Adults, other than biological, legal, or adoptive parents, must demonstrate some legally protectable interest in the care and custody of the child before being permitted to intervene in a termination proceeding. These legally protected interests may arise from four sources. First, they may be recognized and protected by federal and state constitutions. Second, they may be derived from a statute.[8] Third, they may arise from a prior court order. Fourth, they may be derived from the actual exercise of significant parental duties, control, or responsibilities for the child's benefit. Our task in this case is to determine whether Ms. Skerrett possesses one of these legally protectable interests.

It is now beyond reasoned debate that in Tennessee, biological and adoptive parents have constitutionally protectable interests in the care and custody of their children. *Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). However, Tennessee's courts have never held that members of a child's extended family, including the child's grandparents, have these same inherent rights. Other state courts that have addressed this issue have determined that grandparents and other members of a child's extended family do not have an absolute right to participate in a parental termination proceeding because they do not possess the same inherent, constitutionally protected rights possessed by biological and adoptive parents. *E.g., In re Adoption of I.K.E.W.*, 724 N.E.2d 245, 249 (Ind. Ct. App. 2000); *In re M.B.*, 91 S.W.3d 122, 124-25 (Mo. Ct. App. 2002); *In re Herbert PP.*, 751 N.Y.S.2d 96, 98 (App. Div. 2002); *In re*

---

[3] Tenn. R. Juv. P. 1(b).

[4] One of the "primary" purposes of Tennessee's recent adoption statutes is to "recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, which are specifically protected by the constitutions of the United States and the state of Tennessee . . .." Tenn. Code Ann. § 36-1-101(a). Of course, included among the rights "specifically" protected by the state and federal constitutions are the fundamental, non-textual rights recognized by the federal and state courts.

[5] Tenn. Code Ann. § 37-1-101(a)(4).

[6] Tenn. Code Ann. § 36-1-101(a)(5).

[7] Tenn. Code Ann. § 36-1-101(d).

[8] Reflecting Tenn. R. Civ. P. 24, a statute may confer on an adult an unconditional or a conditional right to intervene.

*Schmidt*, 496 N.E.2d 952, 957 (Ohio 1986). These decisions are entirely consistent with Tennessee's law and public policy. Accordingly, we conclude that the biological relationship between a child and the members of his or her extended family is not sufficient, by itself, to create a legally protected interest that warrants permitting the family members to intervene in termination or adoption proceedings.

Legally protectable interests may also be supplied by statute; however, we know of no statute in Tennessee that enables members of a child's extended family to intervene in termination or adoption proceedings to obtain custody of the child. To the contrary, Tenn. Code Ann. § 36-1-117(a)(1) (2001), which identifies the persons who must be made parties to termination and adoption proceedings does not mention members of a child's extended family. In fact, after explicitly identifying biological parents, legal parents, putative biological fathers, and guardians, the statute states that "[o]ther biological or legal relatives of the child . . . are not necessary parties to the proceeding." Tenn. Code Ann. § 36-1-117(d)(1).

Another statute defining the rights of grandparents with regard to their grandchildren provides only limited visitation rights. As long as the statutory conditions are met, the grandparents of children who have been removed from their parents' custody may obtain a court order providing them reasonable visitation with their grandchildren. Tenn. Code Ann. § 36-6-302(a)(2) (2001). However, this visitation right ends by operation of law when the child is adopted by any person other than a stepparent or another relative of the child, Tenn. Code Ann. §§ 36-6-302(b), -307(d)(2) (2001), and provides no statutory basis for obtaining custody as a matter of right in cases of this sort. Accordingly, we find no statutory basis for permitting members of a child's extended family a right to intervene in termination or adoption proceedings.

Members of a child's extended family may also possess a legally protectable interest in a child's care and custody by virtue of a previous court order appointing them the child's guardian, placing the child in their custody, or otherwise empowering them to make decisions regarding the child that parents would ordinarily make. Orders granting limited visitation rights are not the sort of orders that give rise to a legally protectable interest in the care and custody of a child.

Finally, members of a child's extended family could have a legally protectable right in the care and custody of the child if they have taken on significant parental responsibilities with regard to the child. As Chief Justice Celebrezze has pointed out:

> [i]ntervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have a legal right to or a legally protectable interest in custody or visitation with their grandchild, where the grandparents have stood *in loco parentis* to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild.

*In re Schmidt*, 496 N.E.2d at 958 (Celebrezze, C.J., concurring).

Ms. Skerrett's motion to intervene and petition for custody did not articulate a specific basis for her request for custody of her grandson. She asserted only that she was the "[g]randmother of the minor child." Neither her biological relationship nor her desire to have custody provide her with a legally protectable interest in the care and custody of her grandson. The juvenile court should have permitted her to intervene only if she demonstrated either that she was entitled to intervene by virtue of a statute or prior court order or that she had exercised significant control and responsibilities regarding the child. Ms. Skerret made neither of these showings. Therefore, the court should have denied her request to intervene as a party in the proceeding to terminate her son's parental rights.

Denying Ms. Skerrett's request to intervene in her son's termination proceedings does not leave her without a remedy with regard to the future care and custody of her grandson. Until the time her grandson is adopted, Tenn. Code Ann. § 36-6-302(a)(2) gives her a limited right to visitation. In addition, nothing prevents her from seeking to adopt her grandson herself. *See In re Herbert PP*, 751 N.Y.S.2d at 98 (noting that adoption is the sole and exclusive means for a grandparent to gain the care and custody of a grandchild following termination of the parent's parental rights).

### III.
### THE CRITERIA FOR CUSTODY

Even though we have determined that Ms. Skerrett was not entitled to intervene in the proceeding to terminate her son's parental rights, we have chosen to address two other issues she has raised because they will arise in other proceedings of this sort. The first involves what preference, if any, grandparents should receive when parties are competing for custody prior to an adoption. The second involves the factors that should be used to determine which party should receive custody in circumstances such as this one.

### A.

Ms. Skerrett first asserts that she should be given preference over AGAPE because she is a member of the child's extended family. While Tennessee's courts have recognized a preference for natural parents over non-parent third parties in some custody contexts, *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992), they have not extended these superior rights to members of a child's extended family, including grandparents. There is a compelling legal basis for declining to give superior rights to grandparents who have not established a significant relationship with their grandchild.

A grandparent's interest in the care and custody of his or her grandchild stems from his or her relationship with the child's parent. An order terminating a biological parent's parental rights completely and indelibly extinguishes not only the parent-child relationship, Tenn. Code Ann. § 36-1-113(l)(1) (2001); *C.J.H. v. A.K.G.*, No. M2001-01234-COA-R3-JV, 2002 WL 1827660, at *2 (Tenn. Ct. App. 2002) (No Tenn. R. App. P. 11 application filed); *O'Daniel v. Messier,* 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995), but also the legal relationship between a child and his or her grandparents. Following the termination of a parent's parental rights, the statutory rights of the parent's parents are limited solely to visitation as long as the child is not adopted by a person who is not a stepparent or a relative of the child. Tenn. Code Ann. §§ 36-6-302(b), -307(d)(2).

**B.**

Ms. Skerrett also argues that the juvenile court should have treated her request for custody as if it were an initial custody decision. Accordingly, she asserts that the court should have engaged in a comparative fitness analysis in which she would have been favored over AGAPE because she was related to the child. Ms. Skerrett is again mistaken because this proceeding did not involve an initial custody determination. The court had already placed the child in AGAPE's custody pending the hearing on its petition to terminate Mr. Skerrett's parental rights.

Parties seeking to change an existing custody arrangement must demonstrate the existence of a material change in circumstances since the entry of the initial custody decision and that the child's interests will be best served by changing the existing custody arrangement. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d at 148, 150. Ms. Skerrett has made neither showing in this case.

The child has been in the custody of his pre-adoptive foster parents ever since November 2000. Ms. Skerrett produced no evidence that the circumstances of the child or his foster parents have changed in any material way since November 2000 or that the child's interests would be better served by awarding her custody of the child. To the contrary, the evidence demonstrates that the child's interests will be ill-served if he were to be uprooted from the only home he has known and placed in Ms. Skerrett's custody. Thus, in addition to her lack of standing, Ms. Skerrett failed to present any evidence warranting a change in the existing custody arrangements.

**IV.**
**MS. SKERRETT'S REQUEST FOR ATTORNEY'S FEES**

As a final matter, Ms. Skerrett asserts that the juvenile court erred by declining to award her attorney's fees. Tennessee, like many other states, follows the American Rule that requires litigants to pay their own legal expenses in the absence of a statute or contractual provision otherwise. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 33 (Tenn. Ct. App. 2002). Accordingly, to recover her attorney's fees, Ms. Skerrett must point to some statute authorizing their payment.

Tenn. Code Ann. § 36-5-103(c) (2001) empowers courts to award "spouses" their reasonable attorney's fees in actions "concerning the adjudication of custody or the change of custody of any child, or children." Courts may award attorney's fees under this statute when doing so is just and equitable under the facts of the case. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). There are two reasons why Tenn. Code Ann. § 36-5-103(c) does not provide a basis for Ms. Skerrett's claim. First, she is not a spouse seeking reimbursement from another spouse. Second, even if the plain words of the statute could somehow be stretched to cover her, she has not demonstrated that it would be just and equitable to require AGAPE to pay her legal expenses. She did not prevail in this case, and in fact, we have determined that the juvenile court should not have permitted her to intervene in this proceeding because she lacks a legally protectable interest in the care and custody of her son's child. Accordingly, the court did not err by denying Ms. Skerrett's request for attorney's fees.

## V.

We affirm the juvenile court's dismissal of Ms. Skerrett's petition for custody and remand the case for whatever further proceedings may be required. We tax the costs of this appeal to Jennifer Skerrett and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE